814 A.2d 592

**Mark Allen McKAY and Leann Kay Miller**

**v.**

**STATE of Maryland.**

**No. 462, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Dec. 30, 2002.

Douglas I. Malcom, Greenbelt, for Appellants.

Shannon E. Avery, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, Jack Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief.), for Appellee.

Submitted before JAMES R. EYLER, BARBERA,
CHARLES E. MOYLAN, Jr. (Retired, specially assigned), JJ.

BARBERA, Judge.

This case raises two questions related to the lawfulness of a car search. We are asked whether the police could rely on information supplied by informants in deciding that there was probable cause to search the car for drugs. We hold that the police could rely on the information supplied to them and that it, largely corroborated by independent police investigation, gave them probable cause for the search. We are also asked whether that probable cause was undermined, if not negated altogether, by the failure of a drug sniffing dog to alert to the presence of drugs in the car moments before the search was undertaken. We hold that the police continued to possess probable cause that the car contained drugs notwithstanding the dog's failure to indicate their presence. The search was lawful, accordingly.

Appellants Mark McKay and Leann Miller were charged by indictment with having committed numerous drug-related offenses. Appellants filed a motion to suppress the physical evidence that was obtained in the warrantless search of McKay's car and in the subsequent execution of a warrant to search appellants' apartment. Following a hearing, the Circuit Court for Prince George's County denied the motion. Appellants thereafter waived their right to a jury trial, entered not guilty pleas to all charges, and consented to have an agreed statement of facts read into the record for the court's determination of guilt.

The court found McKay guilty of possession, possession with intent to distribute cocaine and marijuana, possession of a firearm during and in relation to a drug trafficking crime, conspiracy to distribute a controlled dangerous substance, and maintaining a common nuisance. The court sentenced McKay to a period of ten years' incarceration, with all but five years suspended and without the possibility of parole, to be followed by five years' probation. The court found Miller guilty of possession, conspiracy to distribute a controlled dangerous

substance, and maintaining a common nuisance, and sentenced her to incarceration for two years, with all but two days suspended, and two years of probation.

Appellants raise the following issue on appeal:

Did the suppression court err in denying appellants' motion to suppress drugs seized during a warrantless search of appellant McKay's vehicle?

## FACTS AND PROCEEDINGS

Detective Tom Moreland is a member of the Greenbelt City Police Department and of the Maryland State Police and Prince George's County Drug Task Force. Detective Moreland testified at the suppression hearing that in the Spring of 2001 he learned from a source, George Michael Richardson, that Jacquelyn Thompson was distributing cocaine hydrochloride and that her drug source was her son, appellant McKay. According to Richardson, McKay delivered cocaine hydrochloride and marijuana to Thompson at various locations, including her place of employment, so that she could then sell the drugs.

Detective Moreland verified the information Richardson provided by independently confirming Thompson's place of employment, place of residence, and her relationship to McKay. Moreland also conducted three undercover hand-to-hand drug purchases with Thompson during April, May, and June 2001. After the third of these, Moreland informed Thompson that he was a police officer. Thompson thereafter admitted to Moreland that McKay served as her drug supplier and agreed to cooperate with police to force McKay to cease his drug distribution.[1]

---

1. Appellants refer in their brief to Richardson and Thompson as "confidential sources." The record shows, however, that at the suppression hearing the State disclosed Richardson's identity and confirmed Thompson's identity as the two informants. Moreover, a police report had referred to the confidential informant's having led the police to Thompson, who was identified by name in the report. Appellants were given the police report in discovery.

Moreland launched an investigation to verify Thompson's identification of McKay as her drug source.  In the course of this investigation, Moreland learned McKay's full name and address and that he resided with appellant Miller.  Moreland obtained McKay's driver's license photograph from the Motor Vehicle Administration ("MVA").  Moreland also learned from the MVA that McKay owned a 1995 Honda Prelude and Miller owned a 1997 Hyundai Accent.  A criminal history check on McKay disclosed that he had been arrested on three prior occasions;  at least one arrest involved drug offenses.[2]

In early June 2001, the police verified that the apartment was leased to both McKay and Miller.  Thereafter, the police conducted a "loose" surveillance of appellants' residence, identifying both appellants as they emerged separately from their residence.

In cooperation with the police, Thompson arranged for McKay to deliver two ounces of cocaine hydrochloride to her place of employment, LAB Towing, in Lanham, Maryland, on June 14, 2001.  The police learned from Thompson that McKay would be delivering the drugs "possibly before four o'clock that afternoon."

In preparation for the pre-arranged drug purchase, the police set up surveillance of appellants' residence on June 14, 2001.  At about one o'clock that afternoon, the police observed McKay emerge from the apartment carrying a black book bag. McKay got into his vehicle with the bag and drove to an automotive shop.  He entered the shop and exited with another male.  Both men got into McKay's vehicle and drove in the direction of LAB Towing.

Sergeant Michael Lewis of the Maryland State Police assisted in the operation.  He stationed his cruiser several blocks away from LAB Towing.  According to plan, Sergeant Lewis conducted a traffic stop of McKay at about 2:45 p.m. on the basis that McKay's car was missing a front registration plate.

---

2.  Moreland testified that he did not attempt to ascertain the outcome of these charges.

Sergeant Lewis was able to identify McKay and his vehicle because he had been briefed earlier that day on the details of the investigation.

During the traffic stop, Lewis asked McKay for consent to search his vehicle. When McKay refused to consent to the search, Lewis called for a drug sniffing dog to scan the automobile. The dog failed to alert during the scan. Lewis later learned from its handler, however, that the dog was on medication as a result of an attack at the kennel a few days prior and should not have been working that day.

Lewis advised a supervisor that the dog failed to alert to the presence of drugs in McKay's vehicle, and was instructed to search the vehicle anyway. Lewis opened the driver's side door of McKay's vehicle and seized the black bag on the back seat. In the bag, Lewis found approximately two pounds of marijuana and several thousand dollars in U.S. currency. One ounce of cocaine hydrochloride was found in the car's console. After completing the search, Lewis placed McKay under arrest.

Moreland thereafter secured a search warrant for appellants' residence. In executing the warrant, the police seized controlled dangerous substances, weapons, and drug paraphernalia, and thereafter arrested Miller.

At the subsequent suppression hearing, appellants sought suppression of the evidence seized from McKay's car and their apartment. Appellants did not challenge either the initial traffic stop or the delay attendant to the arrival of the drug sniffing dog. Instead, appellants argued that the search of the car was not accompanied by the requisite probable cause that it contained drugs. Appellants specified that the police could not reasonably have relied on the informants' information that McKay distributed drugs and was carrying drugs in his car that afternoon. Appellants asserted in the alternative that, even assuming the police were initially possessed of probable cause, it was dissipated when the dog failed to alert on the car. From there, appellants argued that because the evidence seized in the unlawful car search was relied upon in

obtaining the warrant to search their apartment, the evidence obtained in executing that warrant should also be suppressed under the doctrine of "fruit of the poisonous tree." [3]

The court (Shepherd, J.) denied the motion, reasoning that the police had probable cause to search the car based on the informants' information about McKay and his drug distribution, which information was sufficiently verified by independent investigation. Judge Shepherd also found that the dog's failure to alert did not negate probable cause, noting that "[s]ometimes you have incompetent dogs." Consequently, he denied appellants' motion to suppress.

## DISCUSSION

As appellants have formulated the issue, the propriety of the court's refusal to suppress the evidence seized in the search of McKay's car and appellants' apartment turns entirely on the question whether the police had the necessary probable cause to search the car in the first place. For the reasons that follow, we hold that they did.

In reviewing the grant or denial of a motion to suppress, we are limited to the record developed at the suppression hearing. *Nathan v. State*, 370 Md. 648, 659, 805 A.2d 1086 (2002); *Graham v. State*, 146 Md.App. 327, 341, 807 A.2d 75 (2002). We view the suppression court's fact findings in the light most favorable to the prevailing party, here, the State. *Graham*, 146 Md.App. at 341, 807 A.2d 75. Where facts are in dispute, we accord great deference to the suppression court and accept its findings of fact unless clearly erroneous. *Nathan*, 370 Md. at 659, 805 A.2d 1086. As to legal questions that arise during a suppression hearing, we review them " '*de novo* and based upon the evidence presented at the suppression hearing and the applicable law, we then make our own constitutional appraisal.' " *Id.* (quoting *Wilkes v. State*, 364 Md. 554, 569, 774 A.2d 420 (2001)).

---

**3.** The State did not raise at the suppression level a challenge to Miller's standing to contest the search of McKay's car.

The case *sub judice* implicates the "automobile exception" to the warrant requirement established in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court of Appeals recently restated the *Carroll* doctrine in *Nathan:* "Police officers who have probable cause to believe that there is contraband or other evidence of criminal activity inside an automobile that has been stopped on the road may search it without obtaining a warrant." 370 Md. at 665–66, 805 A.2d 1086 (2002); *accord State v. Wallace*, 372 Md. 137, 145–46, 812 A.2d 291 (2002).

Probable cause has been defined as " 'a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion.' " *Wilkes*, 364 Md. at 584, 774 A.2d 420 (quoting *Doering v. State*, 313 Md. 384, 403, 545 A.2d 1281 (1988)). As the Court stated in *Wilkes:* " ' "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." ' " *Id.* (quoting *Doering*, 313 Md. at 403, 545 A.2d 1281) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause for a *Carroll* search of an automobile may be based on an informant's tip, "where the tip is credible under the 'totality of the circumstances' test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)." *Malcolm v. State*, 314 Md. 221, 222–23, 550 A.2d 670 (1988) (citations omitted).

Appellants first contend that the informants lacked a sufficient track record with police and, therefore, the information they provided was unreliable and could not establish probable cause for the warrantless search of McKay's vehicle. We disagree.

We emphasize as a preliminary matter that, in determining the existence vel non of probable cause, an informant's "veracity" is *not* to be examined in a vacuum, but as it relates to the totality of circumstances. Judge Moylan made this

abundantly clear in his recent opinion for this Court in *Ashford v. State,* 147 Md.App. 1, 807 A.2d 732 (2002). There, he declared that "the very concept of examining an informant's veracity in a doctrinal vacuum chamber did not survive 1983." *Id.* at 12, 807 A.2d 732. That year, the Supreme Court decided *Illinois v. Gates.* *Gates* substituted the totality of circumstances test for the two-pronged "veracity" and "basis of knowledge" test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which had been used for assessing the reliability of informant information in the probable cause calculus.

■ Under the totality of circumstances approach of *Gates,* the police had probable cause to search McKay's car. First, and without intending even remotely to suggest that extensive corroboration by the police was necessary to establish the "veracity" of Richardson and Thompson, *see Ashford,* 147 Md.App. at 16–21 & 21 n. 3, 807 A.2d 732, we point out that the veracity of their information was fully corroborated, in any event, by extensive follow-up investigation by the police. And, because the statements of the two informants contained significant factual overlap, corroboration of each of the statements enhanced the reliability of the other.

Richardson informed the police that Thompson was distributing marijuana and cocaine hydrochloride out of her place of business and that Thompson's son, McKay, served as her drug source. Based on that tip, Detective Moreland conducted three hand-to-hand drug purchases with Thompson. These transactions, coupled with Thompson's revelation that McKay was her supplier, corroborated much of the information Richardson supplied, reflecting that he could be believed and that his information was grounded in fact.

Based on the information provided by Thompson, the police, in turn, confirmed McKay as her drug source. The police verified appellants' home address and the type of vehicles they drove and obtained MVA photographs of appellants. The police conducted surveillance of their residence, confirming the

identity of appellants, their residence, and the cars they drove. The police also learned from a check of his criminal history that McKay had been arrested at least once before on drug charges.

Most importantly, the police arranged with Thompson to have McKay deliver cocaine hydrochloride to her at her place of business at about 4:00 p.m. on June 14, 2001. On that day, the police set up surveillance outside appellants' residence and observed McKay emerge from his apartment carrying a black bag during the window of time he was expected to deliver the drugs. The police also observed McKay drive his vehicle in the direction of Thompson's place of employment as expected, and they stopped the car while en route to that location.

These facts, viewed in their totality and in the light most favorable to the State, supplied the police with ample evidence to warrant the probable cause belief that McKay's car contained drugs at the time it was stopped. We are not persuaded by appellants' argument that the informants lacked credibility, or that their information was unreliable, merely because they did not advise police about the manner in which the drugs would be packaged or transported, or that McKay would pick up a passenger en route to the drug sale. Although these details could have assisted police in verifying, to an even greater degree, the informants' credibility and the reliability of their information, these details certainly were not vital to establishing probable cause. *Cf. Gates*, 462 U.S. at 245–46, 103 S.Ct. 2317 (stating that even incorrect information in an anonymous tip will not defeat probable cause if the tip has been substantially corroborated).

Appellants argue in the alternative that, even if the police had probable cause to search McKay's vehicle when Trooper Lewis initiated the traffic stop, the drug sniffing dog's failure to alert to the drugs in the vehicle, while not necessarily negating probable cause altogether, "certainly is to be weighed for its exculpatory effect." It is settled "that once a drug dog has alerted a trooper 'to the presence of illegal drugs in a vehicle, sufficient probable cause exist[s] to support a

warrantless search of [a vehicle].'" *Wilkes,* 364 Md. at 586, 774 A.2d 420 (quoting *Gadson v. State,* 341 Md. 1, 8, 668 A.2d 22 (1995), *cert. denied,* 517 U.S. 1203, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996)); *accord Wallace,* 372 Md. at 146, 812 A.2d 291. It does not follow from this settled proposition, however, that probable cause is dissipated by the dog's *failure* to alert.

We find no Maryland case law addressing the extent to which, if at all, a drug sniffing dog's failure to detect drugs during a vehicle scan undermines probable cause. Courts in other jurisdictions, however, have addressed the effect of a drug dog's failure to alert in cases involving probable cause determinations. Typical of those decisions is *United States v. Jodoin,* 672 F.2d 232 (1st Cir.1982). There, a drug dog failed to alert to a suitcase suspected of containing narcotics. *Id.* at 234. Despite the dog's non-alert, Drug Enforcement Administration agents obtained a warrant to search the luggage based on the suspect's behavior and suspicious travel itinerary. *Id.* A search of the bag revealed several pounds of cocaine, and the bag's owner later challenged the search claiming that probable cause did not exist to obtain the warrant. *Id.* Rejecting this argument, the First Circuit stated:

> Although a drug detecting dog did not react when it sniffed the suitcase, the agents pointed out that, according to dog handlers, "the dogs are not foolproof," they "are less accurate on hot muggy days," and drug traffickers have found ways "to mask the odors of contraband to fool detection efforts." The dog's failure to react does not, in our view, destroy the "probable cause" that would otherwise exist. It is just another element to be considered by the magistrate.

*Id.* at 236.

In a case before the Fifth District Court of Appeal of Florida, a drug dog at the Orlando airport failed to detect the presence of drugs in a suspect's suitcase despite an earlier alert by a drug dog in Houston, Texas. *State v. Siluk,* 567 So.2d 26, 27 (Fla.App.1990). When the bag's owner refused consent to search his suitcase, the police seized the bag and obtained a search warrant, which subsequently revealed 1,784

grams of marijuana. *Id.* The court held that the dog's failure to alert did not neutralize the probable cause where the Orlando officers could have properly assumed that the information concerning the earlier alert in Houston was "truthful and reliable." *Id.* at 28. *See also Schmid v. State,* 615 P.2d 565, 577 (Alaska 1980) (holding that magistrate judge had probable cause to issue warrant notwithstanding affiant's apparently unintentional failure to advise that drug dog had failed to alert on suitcase police suspected contained marijuana).

We agree with the reasoning in *Jodoin* and *Siluk* that a drug sniffing dog's failure to detect drugs does not automatically negate probable cause. It is, instead, but one factor to be considered in the probable cause determination.

As we have said, in this case the police had probable cause to believe that McKay's car contained drugs, before the dog sniff was conducted. Indeed, the existence of probable cause at that juncture was not even a "close call." The suppression court heard testimony that the dog's failure to alert was due to its being on medication. The court apparently credited that testimony, as reflected by the court's comment that "sometimes you just have incompetent dogs." We treat that determination as fact. *State v. Brooks,* 148 Md.App. 374, 402, 812 A.2d 342 (2002). Considered in the totality of the circumstances, the dog's non-alert—particularly in view of the reasonable explanation for it—did not negate the probable cause necessary for the search of the car.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**