# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39187

STATE OF IDAHO, )
)
   Plaintiff-Respondent, )
)    **Boise, August 2012 Term**
)
v. )
)    **2012 Opinion No. 123**
)
STEVEN CLAY ANDERSON, )
)    **Filed: September 14, 2012**
)
   Defendant-Appellant. )
)    **Stephen W. Kenyon, Clerk**
_____ )

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Cassia County. The Honorable Michael R. Crabtree, District Judge.

Order denying motion to suppress is <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant. Diane Marie Walker argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

J. JONES, Justice.

During a traffic stop, police officers searched Steven Clay Anderson's vehicle based on a drug dog's alert on the exterior of the vehicle, as well as other suspicious circumstances. The district court denied Anderson's motion to suppress evidence found during the search, holding that probable cause did not dissipate when the same dog failed to alert a second time when placed inside the vehicle. On appeal, the Court of Appeals affirmed. We granted review and affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

At approximately 11:00 p.m. on February 28, 2008, Anderson was stopped for a traffic violation by Cassia County Deputy Sheriff Antonio Bernad. Prior to the stop, Bernad observed Anderson driving a van in an erratic manner. The van nearly sideswiped another vehicle attempting to pass on the right, forcing the passing vehicle to swerve to avoid collision. Bernad activated his

1

emergency lights and followed Anderson. When the van did not immediately stop, Bernad activated his siren. The van traveled another block before pulling over.

Bernad approached the van and asked for Anderson's driver and vehicle information. Anderson told Bernad that the van belonged to his brother and that Anderson had taken the license plates from his own car and put them on the van. Bernad later confirmed that the plates checked out to another vehicle. Anderson also told Bernad that he did not have insurance for the van. He explained that he was driving erratically because he was paying attention to a bar of what he described as platinum, which he told Bernad he had mined. With Anderson's permission, Bernad looked into the driver door of the van and saw a metal bar between the seats. When asked if he was on probation, Anderson told Bernad that he was not but that he "did have charges pending for a controlled sales and delivery charge."

Bernad informed Anderson that he would be issuing citations[1] and directed him to stay in the driver's seat and keep his hands on the wheel where the officer could see them. While writing the citations and running information checks on Anderson, Bernad observed Anderson moving around inside the van and not keeping his hands on the wheel as directed. Based on what Bernad described as Anderson's "furtive movements," as well as Anderson's pending drug charges, Bernad called in a drug dog unit to investigate possible drug activity. In further violation of Bernad's instructions, Anderson then opened the driver's door of the van and appeared to be attempting to exit the van. The officer ordered Anderson to get out and stand at the back of the van to get him away from any possible weapons in the vehicle. He searched Anderson for weapons and found two pocket knives.

Bernad resumed writing Anderson's citations, and Rupert Police Department Officer Weber arrived at the scene with a drug dog and began circling the van. Weber informed Bernad that the dog had alerted on the passenger side door, and Bernad directed that the dog be put inside the van while Bernad finished writing the citations. The dog failed to alert a second time while inside the van. Bernad completed Anderson's citations and—after questioning him about the contents of the van—the officers manually searched the vehicle and discovered a rifle.

Anderson was arrested and charged with possession of a firearm by a felon under I.C. § 18-3316. He moved to suppress evidence of the firearm found in the search of the van on the basis that

---

[1] Bernad testified that he wrote three citations—for operating an unregistered motor vehicle, failure to carry proof of insurance, and fictitious display of license plates.

the traffic stop was unreasonably extended and that the officers lacked probable cause to support the warrantless search, arguing that probable cause dissipated when the drug dog failed to alert inside the car. The district court denied the motion on both grounds, finding that the stop was not unreasonably prolonged and that "when the drug dog indicated on the passenger side door of Anderson's van, the officer's [sic] had probable cause to search the van." Further, the court stated, "Anderson has presented no authority, and this Court has located no authority, for the proposition that probable cause is dissipated for a search if the dog indicates on one part of the vehicle but does not later alert on another part of the vehicle."

Anderson entered a conditional guilty plea, was sentenced, and filed a timely appeal from the denial of his suppression motion, raising only the probable cause issue on appeal. The Court of Appeals affirmed the district court's judgment. Anderson sought, and we granted, review.

## II.
## ISSUE ON APPEAL

I. Did the district court err in determining that probable cause, based in part on a drug dog's alert outside Anderson's vehicle, did not dissipate when the dog subsequently failed to alert inside the vehicle?

## III.
## DISCUSSION

### A. Standard of Review.

When reviewing a Court of Appeals decision, this Court directly reviews the decision of the lower court but gives serious consideration to the views of the Court of Appeals. *Head v. State*, 137 Idaho 1, 2, 43 P.3d 760, 761 (2002). In reviewing an order denying a motion to suppress evidence, this Court applies a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). This Court will accept the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found. *Id.*

### B. The district court correctly found that, under the totality of the circumstances, the police officers maintained probable cause to search Anderson's vehicle even after the drug dog failed to alert inside the vehicle.

On appeal, Anderson makes several arguments attacking the warrantless vehicle search, but only one ground was properly preserved at the district court level. First, although Anderson now

questions the reliability of the drug dog, he failed to raise that issue before the district court.[2] Second, while Anderson argues on appeal that the officers *never* possessed probable cause to support the search, he admitted in his motion to suppress that "once the drug dog hit on the van it then gave the officers probable cause to allow the dog to search the vehicle." Because this Court will not address issues raised for the first time on appeal, we disregard the arguments relating to the reliability of the drug dog and the establishment of probable cause prior to the dog's failure to alert inside the van. *See Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001).

Anderson properly preserved his argument that the officers did not have probable cause at the time the rifle was found because probable cause dissipated upon the drug dog's failure to alert inside the van. The district court noted a lack of authority on the question and found that, under the totality of the circumstances, the police officers maintained probable cause even after the failure to alert. In affirming the district court, the Court of Appeals observed that the issue was one of first impression in Idaho but relied on cases in which other courts have held probable cause was not dissipated just because the initial technique used in a search was unsuccessful. The State agrees and now argues that the officers' probable cause entitled them to perform a full search of the vehicle, including both a drug dog search *and* a manual search, and the mere failure of the first search technique to uncover contraband did not foreclose the second.

The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution prohibit unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable unless they fall within one of several narrowly drawn exceptions. *State v. Gallegos*, 120 Idaho 894, 897, 821 P.2d 949, 952 (1991). One of those exceptions, the "automobile exception," allows police to search a vehicle without a warrant when there is probable cause to believe the vehicle contains contraband or evidence of a crime. *State v. Buti*, 131 Idaho 793, 800, 964 P.2d 660, 667 (1998). Probable cause is established when the totality of the circumstances known to the officer at the time of the search would give rise—in the mind of a reasonable

---

[2] Specifically, Anderson argues that the dog had insufficient training and was unable to distinguish residual odors from present drugs. The testimony below revealed that the dog was trained and certified after passing a test in which he found approximately ten hidden substances and that the dog had two prior false positive alerts based on residual odors. A district court may indeed take the fact that a drug dog sometimes responds to residual odors into account in assessing the dog's reliability. *State v. Yeoumans*, 144 Idaho 871, 875, 172 P.3d 1146, 1150 (Ct. App. 2007). However, Anderson raised no such question to the district court in the case at hand and, in fact, made no foundational challenge whatsoever to admission of evidence about the dog's behavior. Thus, we decline to address issues regarding the training and reliability of the dog. *See Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001).

person—to a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Josephson*, 123 Idaho 790, 792–93, 852 P.2d 1387, 1389–90 (1993). Probable cause is a flexible, common-sense standard, and a practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742 (1983).

A reliable drug dog's alert on the exterior of a vehicle is sufficient, in and of itself, to establish probable cause for a warrantless search of the interior. *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999). The U.S. Supreme Court has held that probable cause to believe a vehicle contains evidence of criminal activity "authorizes a search of any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009) (citing *United States v. Ross*, 456 U.S. 798, 820–21 (1982)). However, the Supreme Court has noted that "probable cause may cease to exist" when police "learn, for instance, that contraband is no longer located at the place to be searched." *United States v. Grubbs*, 547 U.S. 90, 96 n.2 (2006). This Court has not previously addressed the issue of probable cause dissipation, but the Ninth Circuit discussed the concept in *United States v. Ortiz–Hernandez*, stating that, "[i]f probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity." 427 F.3d 567, 574 (9th Cir. 2005).

Other courts addressing the question have generally held that a drug dog's failure to alert is only one factor to be considered in the probable cause analysis. For example, in *United States v. Jodoin*, the First Circuit held that a "dog's failure to react does not . . . destroy the 'probable cause' that would otherwise exist. It is just another element to be considered by the magistrate." 672 F.2d 232, 234–36 (1st Cir. 1982) (holding that police did not violate the Fourth Amendment by holding defendant's suitcase for several days, even though a drug dog sniffed the suitcase but did not signal the presence of narcotics), *abrogated on other grounds by Bloate v. United States*, 130 S.Ct. 1345 (2010). *See also United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."); *United States v. Gill*, 280 F.3d 923, 926 n.3 (9th Cir. 2002) (denying defendant's suppression motion although a drug dog failed to alert and noting that drug dogs "are not trained to detect PCP or methamphetamine due to the risk these substances pose to the dogs"); *United States v. Frost*, 999 F.2d 737, 744 (3rd Cir. 1993) ("When one includes both the fact that the drug sniffing dog did

not alert to the suitcase and the fact that drug couriers often mask the scent of drugs in suitcases so that a drug sniffing dog will not alert, the failure to alert to the suitcase is not inconsistent with the substantial probative thrust of information which [the officer] did include [in the warrant].").

In *McKay v. State*, 814 A.2d 592 (Md. App. 2002), police officers established probable cause to search a vehicle for drugs but, just before beginning the search, a drug dog failed to alert on the vehicle. *Id.* at 595. While the *McKay* court noted that a drug dog alert on a vehicle establishes probable cause, it held, "[i]t does not follow from this settled proposition, however, that probable cause is dissipated by the dog's *failure* to alert." *Id.* at 598 (emphasis in original). Similarly, in *State v. Sanchez–Loredo*, 220 P.3d 374, 378 (Kan. App. 2009), the court held:

> The district court also concluded that the failure of the drug dog to alert to possible contraband did not eliminate the probable cause that the facts of this case already supported, and we agree. *See State v. Gonzales*, 2004 WL 2085586, at *4 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 849 (2005) (failure of a drug dog to alert is only one factor to be considered in a probable cause determination).

In a case closely analogous to the one at hand, a drug dog alerted on a piece of luggage in Houston, but after the bag was allowed to proceed to Orlando, a second dog failed to alert. *State v. Siluk*, 567 So.2d 26 (Fla. App. 1990). The *Siluk* court held, "[w]e do not accept the argument that the failure of the local narcotics dog to 'alert' to the luggage neutralized the probable cause flowing from [a prior] alert." *Id.* at 28. Similarly, a failed manual search does not necessarily foreclose officers' ability to perform a subsequent, more thorough search. For example, in *United States v. Olivera–Mendez*, 484 F.3d 505 (8th Cir. 2007), a drug dog alerted on a vehicle, establishing probable cause for a search, but two roadside searches produced no drugs—although some evidence suggested that drugs may have been cleverly concealed. *Id.* at 507–08. A third search at a highway patrol garage, six hours later, produced contraband. *Id.* at 508. The court rejected the claim that probable cause dissipated, noting that "[i]f probable cause justifies the search of [a] lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 512 (quoting *Ross*, 456 U.S. at 825). *See United States v. Patterson*, 140 F.3d 767 (8th Cir. 1998) (fruitless manual search, conducted upon probable cause, did not cause loss of probable cause, allowing for employment of drug dog to locate contraband in the vehicle).

Here, we find that the officers conducting the search of Anderson's vehicle maintained probable cause even after the drug dog failed to alert in its interior. We agree with the courts noted above that a failed alert is not *per se* dispositive of probable cause, but rather merely one factor to be considered in the totality of the circumstances analysis. More specifically, as the court in *Siluk* found, a subsequent failed alert does not necessarily negate a prior positive alert. In other words, the positive-alert–negative-alert issue is not a zero-sum equation. Thus, although in this case the drug dog's subsequent failure to alert may call its initial alert into some question in the mind of a reasonable person, it does not neutralize the first alert completely. Nor did the subsequent failure to alert indicate a positive indication on the part of the dog that no drugs existed. Moreover, as other courts facing the issue have found, couriers of drugs often mask the scent of contraband such that they may go undetected by trained canines. Thus, it is entirely possible that a drug dog may reliably detect drugs in a sniff on one occasion but fail to detect them on another, particularly where the two sniffs are conducted in separate parts of the area to be searched.

Accordingly, even if the initial alert was somewhat undercut by the subsequent failed sniff, we find that it could still reasonably color the officers' perception of the surrounding circumstances enough to establish probable cause. And here there were significant additional circumstances. Officer Bernad caught Anderson driving erratically late at night, in an unregistered vehicle that he did not own, upon which he had placed fictitious plates, and for which he had no insurance. The officer was forced to employ both lights and siren to get Anderson to stop. During the stop, Anderson failed to follow Bernad's clear directions, engaging in "furtive" movements inside the vehicle and attempting to exit the vehicle without permission. Anderson also was under pending controlled substance charges and admitted this to Bernad during the stop. Coupled with the added suspicion of drug activity arising from the drug dog's initial alert, the officers had probable cause to believe drugs would be found in the van.

In sum, in the absence of something more to neutralize probable cause, the initial alert—coupled with the surrounding suspicious circumstances—entitled the officers in this case to perform a thorough search of Anderson's vehicle, including the manual search performed following the failed alert. Thus, the district court correctly denied Anderson's motion to suppress the evidence found in that search.

## IV.
## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Anderson's motion to suppress.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.