IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39950

| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 623 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 12, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROBERT WAGNER RHALL, III, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order of the district court denying suppression motion, affirmed.

Michael J. Wood, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

LANSING, Judge

Robert Wagner Rhall, III appeals from his conviction for felony possession of marijuana. He entered a conditional guilty plea after the trial court denied his motion to suppress the evidence found in his pickup. We affirm the denial of the suppression motion.

## I.

## BACKGROUND

At around noon on April 19, 2011, Idaho State Police Officer Garcia stopped a pickup for speeding on the freeway. Rhall was the driver. When Officer Garcia asked for Rhall's license and registration, he detected the odor of raw marijuana from within the vehicle.

On questioning, Rhall denied having marijuana in the pickup, but said he had carried marijuana in the vehicle several months earlier in California, where he had a medical marijuana permit. Officer Garcia asked Rhall to exit the vehicle and notified him that he would be performing a search of the vehicle. At the officer's request, Rhall removed the two dogs that had

1

been riding in the cab with him. During the search of the pickup's passenger compartment, Officer Garcia found ashes and a stem in the ashtray, both of which he believed to be from marijuana. He also found $1,400 in small bills in a small zip lock bag and $250 in a wallet. Officer Garcia later testified that the separated money was suspicious to him because it was a common practice of drug dealers to separate money brought to cover trip expenses from revenue derived from drug sales.

Officer Garcia was not satisfied that the marijuana ash and stem that he found in the cab was the source of the odor he had detected, because the odor was of raw marijuana, not burnt marijuana. He therefore sought to search the pickup bed, which was covered by a camper shell, and asked Rhall for the key to open the locked shell. Rhall told Officer Garcia that he did not have the key to the shell. Officer Garcia then called for a drug dog to conduct a free-air sniff around the vehicle.

The drug dog handler, Officer Gonzalez, arrived with her dog, Kenzo. Although Kenzo typically would start working on his own, on this occasion he initially would not work. In her later testimony, Officer Gonzalez said that Kenzo was distracted by environmental factors, including Rhall's two dogs and the passing traffic. The video recording from Officer Garcia's patrol car confirms the young dog's interest in Rhall's dogs and his general distraction, and the canine's lack of interest in Rhall's pickup. After several trips around the pickup, however, the dog finally gave what Gonzalez interpreted as several indications at various points on the vehicle.

When the canine sniff was completed, Officer Garcia notified Rhall that while he was not under arrest, his vehicle would be impounded to be searched. Rhall then asked Officer Garcia to obtain Rhall's jacket from the vehicle because he was cold. In searching the jacket's pockets before handing it to Rhall, Officer Garcia found the key for the camper shell. He then opened and searched inside the shell, finding several ounces of marijuana, scales, mushrooms, rolling papers, a bottle of oil, and several small baggies. Within one of the bags of drugs, Officer Garcia found an identification card with Rhall's name on it. Rhall was then arrested and charged with possession of a controlled substance with intent to deliver, Idaho Code § 37-2732(a); possession of a controlled substance, I.C. § 37-2732(c)(3); and possession of drug paraphernalia, I.C. § 37-2734A.

Rhall filed a motion to suppress the evidence found in his vehicle. After that motion was denied, Rhall entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion.

## II.
## ANALYSIS

On appeal, Rhall argues that the district court erred in finding probable cause for the search inside the camper shell because the drug dog's initial disinterest in Rhall's vehicle, and the evidence that his ultimate "alert" was the product of persistent cuing and coaxing by his handler, shows that there was no reliable drug dog alert on which to base probable cause for the search. On review of a suppression motion, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search fell within a well-recognized exception to the warrant requirement. *State v. Tucker*, 132 Idaho 841, 842, 979 P.2d 1199, 1200 (1999); *State v. Holcomb*, 128 Idaho 296, 302, 912 P.2d 664, 670 (Ct. App. 1995). One of the longstanding exceptions to the warrant requirement is the automobile exception which permits the search of a vehicle when there is probable cause to believe there is contraband inside. *United States v. Ross*, 456 U.S. 798, 807-08 (1982); *State v. Yeoumans*, 144 Idaho 871, 873, 172 P.3d 1146, 1148 (Ct. App. 2007).

Probable cause is determined by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It is present when an officer possesses information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that contraband or evidence of criminal activity will be found in a particular location. *State v. Josephson*, 123 Idaho 790, 792-93, 852 P.2d 1387, 1389-90 (1993). Probable cause is not a

certainty, but is a flexible nontechnical standard. *Texas v. Brown*, 460 U.S. 730, 742 (1983). If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825 (1982); *State v. Murphy*, 129 Idaho 861, 864, 934 P.2d 34, 37 (Ct. App. 1997).

The Idaho Supreme Court has held that an alert by a reliable, trained canine indicating the presence of drugs is sufficient to create probable cause for a search. *Tucker*, 132 Idaho at 843, 979 P.2d at 1201; *State v. Braendle*, 134 Idaho 173, 175-76, 997 P.2d 634, 636-37 (Ct. App. 2000). Similarly, there is probable cause for a search when a trained officer detects the smell of marijuana in a vehicle. *State v. Gonzales*, 117 Idaho 518, 519, 789 P.2d 206, 207 (Ct. App. 1990).

In support of his argument that the drug dog's long-delayed "indication" was the result of cuing and coaxing by Officer Gonzalez, Rhall points out that the videotape of the stop shows Officer Gonzalez correcting Kenzo multiple times by pulling on the dog's collar, repeatedly circling Kenzo back toward the pickup, and pointing to or tapping on the pickup. When Kenzo did not respond to Officer Gonzalez's attempt to refocus him, Officer Gonzalez pulled out Kenzo's reward--a towel rolled up as a chew toy--and used it to refocus Kenzo. An expert witness called by the defense, Dr. Lawrence Meyers, testified that showing Kenzo the reward toy prior to an indication from the dog was not a valid practice in a field search, because it tells the canine there is something present that he must find. Meyers also testified that Officer Gonzalez's correction and the number of times the pair went around the vehicle would lead to "cuing," i.e., compelling the canine to give false positive indication of scratching and/or biting at the vehicle. Dr. Meyers said that making multiple consecutive trips around a vehicle is problematic because repeatedly directing the dog to the same area cues the dog to give the desired alert. By repeatedly directing the young dog to the same areas, he said, Officer Gonzalez was shaping the dog's behavior during the search, which increases the chances that the dog would eventually give a false positive indication. In Meyers' opinion, it was acceptable for Officer Gonzalez to make a second trip around the vehicle, but more than that would lead to cuing.

The search here took five minutes, during which Officer Gonzalez and Kenzo circled the vehicle multiple times. Officer Gonzalez acknowledged that this was unusually long for an

4

ordinary canine search. At the motion hearing, Officer Gonzalez testified that Kenzo indicated multiple times, including at the rear bumper, the driver's door, and the driver side corner of the vehicle. Meyers confirmed that the recording shows Kenzo reacting at the back of the pickup, but Meyers felt that this indication was invalid because the recording shows Officer Gonzalez's continuing corrections, including her pointing multiple times at the back of the pickup to direct Kenzo toward that area.

The district court concluded that the evidence here raised serious questions about the validity of the dog's indication on the pickup and that the dog's conduct would not provide a basis for a finding of probable cause. The court nevertheless upheld the search because it found other evidence sufficient to demonstrate probable cause to search inside the camper shell.

We agree. Officer Garcia testified that he smelled raw marijuana when he was obtaining Rhall's documents following the traffic stop. When he found no raw marijuana in the cab, he concluded the odor must be coming from within the camper shell. As noted above, a trained officer's detection of the smell of marijuana in a vehicle suffices for probable cause for a search.

In *State v. Schmadeka*, 136 Idaho 595, 599-600, 38 P.3d 633, 637-38 (Ct. App. 2001), this Court held that the detection of a slight odor of burnt marijuana coming from the passenger compartment of a car did not create probable cause for search of the car's trunk. That case is, however, distinguishable from Rhall's circumstance, because here the officer smelled raw marijuana, not burnt marijuana. As we explained in *Schmadeka*, there is a commonsense distinction between the odor of burnt marijuana in the passenger compartment, which alone is insufficient to establish probable cause for a search of the trunk, and the odor of raw marijuana, which will justify a search of the trunk:

> [The distinction] is premised on the common sense proposition that the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking, and because it is unreasonable to believe people smoke marijuana in the trunks of cars, the mere smell of burnt marijuana does not create the fair probability that the trunk contains marijuana.

*Id.* at 600, 38 P.3d at 638 (quoting *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000)).

Rhall does not contest that the odor of raw marijuana initially gave the officer probable cause for his search of the pickup's cab, but he contends that this probable cause was negated when Kenzo arrived and failed to show an interest in the pickup or to reliably alert. That is,

5

Rhall contends that Kenzo's failure to detect the smell of marijuana overrides the probable cause that would otherwise arise from the officer's detection of the odor.

Contrary to Rhall's proposition, Idaho case law establishes that a drug dog's failure to alert does not necessarily eliminate probable cause. In *State v. Anderson*, 154 Idaho 703, 302 P.3d 328 (2012), our Supreme Court held that such a failure to alert is not dispositive of probable cause. Rather, it is only a fact to be considered while assessing the totality of the circumstances to determine if probable cause exists. *Id.* This is so because a drug dog can fail to perform for a number of reasons: a lack of training, mishandling by the officer, or distraction by environmental factors causing the dog to lose focus on the task at hand. None of these factors diminish the significance of the officer's perception of an odor of marijuana. It is for the trial court to assess the evidence and determine what weight, if any, should be given to the dog's behavior.

In this case, the trial court noted the questionable reliability of Kenzo's indication. In so doing, the court properly considered the dog's distracted behavior and Officer Gonzalez's continued attempts to refocus the dog while assessing the reliability of the evidence. The court then considered all the circumstances at the time, and found that there was probable cause to search Rhall's vehicle even "without the corroborating canine evidence." The court found that regardless of the reliability of Kenzo's search, under the totality of the circumstances there was probable cause to search the vehicle, which started when the officer detected the odor of fresh marijuana, and which was bolstered when the officer's search of the cab uncovered a marijuana stem and ash in the ashtray, $1,400 in small bills in a zip lock bag, and $250 in defendant's wallet.

Given the testimony before it, it is clear that the trial court's decision was founded on substantial and credible evidence, and contrary to Rhall's argument, the trial court properly applied the constitutional principles governing the search of a vehicle.

The district court's order denying Rhall's suppression motion is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**