**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51572**

| | |
|---|---|
| STATE OF IDAHO,<br><br>　　　　Plaintiff-Respondent,<br><br>v.<br><br>KATHRYN ROBERTA ELLIOTT,<br><br>　　　　Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Filed:  March 12, 2025**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County.  Hon. Susie Jensen, District Judge.

Order denying motion to suppress, <u>affirmed</u>; judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Kathryn Roberta Elliott appeals from her judgment of conviction for felony possession of a controlled substance.  Elliott claims the district court erred in denying her motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Officer Burkey stopped Elliott for failure to stop before entering a highway.  As Officer Burkey conducted a driver status check, Officer Davis had a drug dog, Cisco, conduct an open-air sniff of the exterior of the vehicle.  While sniffing the exterior of the vehicle, Cisco showed multiple general behaviors alerting to the presence of controlled substances before putting his paw on the bumper and sitting down.  At this point, officers conducted a search of the interior of the vehicle and found methamphetamine and drug paraphernalia.

1

Elliott was charged with possession of a controlled substance (methamphetamine), Idaho Code § 37-2732(c)(1), and possession of drug paraphernalia, I.C. § 37-2734A. Elliott filed a motion to suppress, contending that the drug dog trespassed against the vehicle before his final indication (or final alert). The State responded, asserting that although Cisco made contact with the vehicle (considered a trespass), probable cause to search Elliott's vehicle was established prior to any trespass. The district court held an evidentiary hearing and denied the motion. Elliott entered a conditional guilty plea to possession of a controlled substance, reserving the right to appeal the order denying the motion to suppress, and the State dismissed the possession of paraphernalia charge. Elliott appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Elliott argues that this Court should disavow the ruling in *State v. Ricks*, 173 Idaho 74, 77, 539 P.3d 190, 193 (Ct. App. 2023), review granted (May 17, 2023), review dismissed as improvidently granted (Dec. 14, 2023).[1] In *Ricks*, this Court held that probable cause may exist even if the drug dog has not given its final indication pinpointing the odor's strongest source. *Id.* Elliott asserts that this Court should instead create a bright-line rule that a final indication is required. Alternatively, Elliott claims that if pre-alert behavior of the drug dog is sufficient for probable cause, the Court should reaffirm the standard set forth in *State v. Howard*, 169 Idaho 379,

---

[1]     This Court recently rejected the same arguments made by Elliott in *State v. Morgan*, ___ Idaho ___, ___P.3d __ (Ct. App. Feb. 12, 2025). As the decision in *Morgan* is not yet final, we restate the analysis here.

384, 496 P.3d 865, 870 (2021) requiring objective evidence for probable cause and hold that Officer Davis's subjective beliefs did not establish probable cause to search her vehicle. We decline Elliott's invitation to overrule *Ricks* or create a bright-line rule for probable cause in the context of drug dog alerts.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and, therefore, violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). A reliable drug dog's sniff of the exterior of a vehicle is not a search under the Fourth Amendment and does not require either a warrant or an exception to the warrant requirement. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

Article I, section 17 of the Idaho Constitution, similarly provides that:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

The automobile exception to the warrant requirement allows police to search a vehicle without a warrant when there is probable cause to believe the vehicle contains contraband or evidence of a crime. *United States v. Ross*, 456 U.S. 798, 823-24 (1982). Probable cause is established when the totality of the circumstances known to the officer at the time of the search would give rise--in the mind of a reasonable person--to a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012). Probable cause is a flexible common-sense standard, requiring only a practical, nontechnical probability that incriminating evidence is present. *Id.*

In *Florida v. Harris*, 568 U.S. 237 (2013), the United States Supreme Court noted that evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert and that if a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. *Id.* at 246-47. Finally, the Court in *Harris* ruled that if the State has produced proof from controlled settings that a dog performs reliably in detecting drugs and the defendant has not contested that showing, then the court should find probable cause. *Id.* at 248.

3

In *Howard*, the Idaho Supreme Court recognized the distinction between a drug dog's general alert behavior and the dog's trained final indication. *Howard*, 169 Idaho at 384, 496 P.3d at 870. The Court noted that the absence of a final indication is not *ipso facto* an absence of probable cause. *Id.* The Court also noted the testimony of the dog's handler is important for proving a dog's general alert to establish probable cause. The Idaho Supreme Court in *State v. Randall*, 169 Idaho 358, 369, 496 P.3d 844, 855 (2021), stated the drug dog handler's testimony was necessary "to explain why [the dog's] behavior was an objectively reliable indication that narcotics were present." *Id.*; *see also Howard*, 169 Idaho at 384, 496 P.3d at 870 (explaining that "[w]ithout objective evidence bearing on the reliability of [the dog's] behavior before his trained alert, we are left with little more than our intuition about the significance of that behavior"); *see also United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013) (holding that "[e]vidence from a trained and reliable handler about alert behavior he recognized in his dog can be the basis for probable cause").

Other courts that have addressed general alerts prior to final indication focus on the dog's behaviors, such as the dog's breathing, posture, and body movements when they are sniffing a vehicle. *See, e.g.*, *United States v. Holleman*, 743 F.3d 1152, 1154 (8th Cir. 2014) (noting dog stopped "dead in his tracks" and began "to really detail the area"); *Thomas*, 726 F.3d at 1087 (noting the "dog's tail and ears went up, his posture and breathing pattern changed, and he started 'air-scenting'"); *United States v. Parada*, 577 F.3d 1275, 1281 (10th Cir. 2009) (noting dog alerted on the driver's side front door by stiffening his body, breathing deeply, and attempting to jump into the window); *cf*. *Harris*, 568 U.S. at 240 (noting drug detection dog alerted by "signaling, through a distinctive set of behaviors, and that he smelled drugs" at the driver's side door). These signals are different than the final indication, which may include a dog sitting, lying down, or otherwise pointing to the odor's strongest source.

This Court in *Ricks* held that "language in *Randall* and *Howard* indicates the Idaho Supreme Court would adopt a rule allowing for probable cause based on a dog's general alert and despite the absence of a dog's final indication." *Ricks*, 173 Idaho at 77, 539 P.3d at 193. This Court concluded "a dog's signaling behavior of a general alert--such as the dog's breathing, posture, body movements, and verbal responses--can constitute probable cause." *Id*. at 79, 539 P.3d at 195. Elliott argues that this Court should disavow the ruling in *Ricks* and instead implement a bright-line rule that requires a final indication prior to establishing probable cause. The

reasonableness standard of the Fourth Amendment in general, and the probable cause standard in particular, are based on the totality of the circumstances and not bright-line rules. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983) (explaining the "totality-of-the-circumstances approach is far more consistent with [the Court's] prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied"). Additionally, Elliott's advocacy for a bright-line rule cannot be reconciled with *Harris* where the United States Supreme Court rejected application of an "evidentiary checklist" because it is the "antithesis of a totality-of-the-circumstances analysis." *Harris*, 568 U.S. at 244-45. The Court reiterated that it has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* We are not persuaded by Elliott's assertion that *Harris's* rejection of a bright-line rule only applies to certification of a drug dog and not to the dog's behaviors in support of a probable cause determination. Thus, we decline to disavow *Ricks* or create a bright-line rule that a final indication is necessary to establish probable cause.

Elliott next claims that an officer's subjective belief that a drug dog has identified the presence of a controlled substance in a vehicle is insufficient for the court to determine probable cause existed in a case where the drug dog has not made a final indication. Elliott contends that this Court should hold that a subjective belief that the drug dog has exhibited such behaviors should never be sufficient to establish probable cause, even if a final indication is not required. Elliott asserts that such a holding is consistent with *Howard* and limits this aspect of *Ricks*. Otherwise, without such objective evidence, Elliott argues, the court will not have an independent and unbiased source of evidence of what the dog did on other occasions that was sufficient to establish probable cause.

An officer's testimony that a dog's behavior demonstrates detection of controlled substances prior to a final indication is no different in character or more subjective than the officer's testimony as to what behavior constitutes a final indication or what it means. In *Ricks*, this Court concluded that "a dog's signaling behavior of a general alert--such as the dog's breathing, posture, body movements, and verbal responses--can constitute probable cause." *Ricks*, 173 Idaho at 79, 539 P.3d at 195. We further concluded that the deputy's "testimony about the dog's signaling behavior provided objective evidence of the dog's general alert to the presence of the odor of drugs emanating from the vehicle before the dog entered the vehicle and supports a probable cause finding." *Id.* at 80, 539 P.3d at 196. Elliott's claim that the officer's "subjective"

5

belief is inappropriate or inadequate is without merit. The officer's testimony, based on training and experience, as to the drug dog's characteristics, behaviors, and their meaning, is appropriately considered by the court in making the probable cause determination.

Elliott claims that if this Court applies the *Howard* standard instead of the *Ricks* standard, the evidence is insufficient to establish probable cause. In other words, Elliott would omit from the probable cause analysis Officer Davis's testimony regarding Cisco's behaviors during the sniff. As we do not so limit the evidence to be considered, Elliott's claim of lack of probable cause fails.

Officer Davis testified that he has been a certified K9 handler since 2007. He trains Cisco at least four hours per week to retain his certification. He has been working with Cisco for about four years. Cisco is his third dog. The initial training of a dog teaches the dog to alert to certain odors of controlled substances and no others. The training includes the officer being able to recognize the dog's behaviors that demonstrate the animal has detected one of the trained odors. Cisco's general alert behaviors include a severe head snap, his ears perking up, casting off, his tail going straight, and deep inhalations. After detecting the odor, Cisco tries to work the source, meaning he moves as close to the strongest odor as he can get. Once Cisco has done that, he will stare at the source of the odor or will immediately sit, sometimes shaking because he knows he has done a good thing. Cisco does not exhibit these behaviors around a clean car. The evidence showed that during the traffic stop in this case, Cisco exhibited the behaviors indicating he had detected an odor of a controlled substance and was tracking that odor. Officer Davis testified that Cisco made two full circles of Elliott's vehicle. On the first rotation, Cisco demonstrated a head snap at the front of the vehicle and, on the second rotation, Cisco's ears went up and he stared at Officer Davis. Officer Davis testified Cisco was "casting out" in front of the vehicle and jumping towards the driver's side open window, indicating general alerts. Officer Davis "corrected" Cisco to ensure he would not break the plane of the window. Officer Davis testified that, after correction, Cisco "stands there and stares at me like, 'Where's my toy? I already alerted for you. It's right here.'" Officer Davis continued: "I wanted him to pinpoint it for me. And so that's why he--he lunges at me because he's mad at me because I had already corrected him off a mirror. He already told me that there was something there." Ultimately, Cisco turned to the back of the vehicle, placed his paw on the bumper, and then sat down.

The district court first determined that Cisco trespassed prior to his final alert by placing his paw on the vehicle. However, relying on the preliminary hearing transcript, testimony from

6

the motion to suppress hearing, and Officer Burkey's bodycam video, the district court found that Cisco demonstrated multiple general alerts when he snapped his head, stared at Officer Davis, perked his ears, and casted out before giving the final alert of sitting down. Relying on Officer Davis's testimony, the district court found:

> [W]hile participating in an open air sniff, Officer Davis looks for distinct behavioral changes when Cisco is working to indicate that he is in odor, including head snaps, perky or upright ears, deep inhalations, his tail going straight or casting off the vehicle, and that Officer Davis testified that Cisco exhibited multiple behavioral changes as listed above prior to placing his paws on the bumper, which, according to his training and experience and the evidence presented to the court, signaled that Cisco had, in fact, detected the odor of narcotics.

The evidence supports the district court's findings of fact which, in turn, support the finding of probable cause. The district court did not find that Officer Davis had a subjective belief that an odor of a controlled substance was present. Rather, it found, based on the evidence, that Cisco demonstrated behaviors known to signal the detection of the odor of a controlled substance. Elliott has failed to demonstrate error by the district court in determining that probable cause existed prior to the trespass. Consequently, Elliott has failed to show error in the denial of her motion to suppress.

## IV.

## CONCLUSION

Substantial evidence supports the district court's probable cause findings. Accordingly, the district court's order denying Elliott's motion to suppress and the judgment of conviction are affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.

7