# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47367

|  |  |  |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2020 Term |
| | ) | |
| v. | ) | Opinion Filed: October 5, 2021 |
| | ) | |
| AARON JAMES HOWARD, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County, Fred Gibler, District Judge.

The decision of the district court is <u>reversed</u>, the judgment of conviction is <u>vacated</u>, and the case is <u>remanded</u>.

Eric D. Fredericksen, Idaho State Appellate Public Defender, Boise, for appellant. Jenny Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Andrew Wake argued.

_____

BRODY, Justice.

Aaron Howard appeals from the denial of a motion to suppress evidence obtained after a police drug-sniffing dog put its nose through the open window of a car Howard had been driving. Howard argues the intrusion of the dog into the physical space of the car was a trespass, and therefore, an unlawful search under the common law trespassory test articulated in *United States v. Jones*, 565 U.S. 400 (2012). We agree, reverse the denial of Howard's motion to suppress, vacate his conviction, and remand this case for further proceedings consistent with this opinion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In March 2019, police officers stopped Howard for a traffic violation and took him into custody after discovering an outstanding warrant for his arrest. Officers then brought in a drug-sniffing dog ("Pico") to sniff the exterior of the car. Pico alerted to the presence of illegal drugs,

and a subsequent search of the car uncovered methamphetamine, heroin, and drug paraphernalia. Neither Howard nor his passenger was the registered owner of the vehicle, and police contacted the owner who took possession of the vehicle at the scene.

After prosecutors charged Howard with drug trafficking offenses related to the heroin and methamphetamine, Howard moved to suppress all evidence arising from the search of the car. During the hearing on the motion, Howard argued Pico momentarily put his nose through the open window of the car before giving his final, trained response to indicate the presence of illegal drugs, and that this was a trespass constituting an unlawful search in violation of his Fourth Amendment rights under *United States v. Jones*, 565 U.S. 400 (2012). The only witness testifying at the hearing was Officer Amy Knisley, Pico's handler. A portion of Knisley's body camera footage showing the dog sniff was also admitted into evidence.

The district court orally denied the motion to suppress. Pursuant to a plea agreement, Howard entered a conditional plea of guilty to trafficking in heroin and the State moved to dismiss the methamphetamine charge. The district court sentenced Howard to six years imprisonment, with three years fixed. Howard timely appealed.

## II.     STANDARD OF REVIEW

We review of the denial of a motion to suppress using a bifurcated standard. *State v. Danney*, 153 Idaho 405, 408, 283 P.3d 722, 725 (2012). We will "accept the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found." *Id.*

## III.     ANALYSIS

### A.  Pico's intrusion into the car constituted a search.

The district court denied Howard's motion to suppress because it found the Court of Appeals opinion in *State v. Naranjo*, 159 Idaho 258, 359 P.3d 1055 (Ct. App. 2015), was controlling. In *Naranjo*, the Court of Appeals held that a drug dog's sniff through the open window of a vehicle had been "instinctual"—as opposed to facilitated or encouraged by the police—and therefore was not a "search" for the purposes of the Fourth Amendment. The district court found the decision in *Naranjo* was "definitely as close to being on point as one can imagine," and denied Howard's motion to suppress in reliance on that case.

Howard argues that *Naranjo* is inconsistent with *United States v. Jones*, 565 U.S. 400 (2012). In *Jones*, the United States Supreme Court articulated a trespassory test for determining

2

when a Fourth Amendment search has occurred, which Howard argues renders *Naranjo* inapplicable. Howard contends that any trespass by the government against private property for the purpose of obtaining information—whether by dog or human, instinctual or otherwise—is a violation of the Fourth Amendment unless police have a warrant, or a warrant exception applies. Because Pico trespassed by putting his nose through the window of the car before giving his final indication, and a final indication was necessary before probable cause could exist to justify a warrantless search of the car, Howard argues that his Fourth Amendment rights were violated. The State counters that Officer Knisley had probable cause before Pico's entry, but in any event, that Pico's entry was instinctual, and the district court was correct to deny Howard's motion under *Naranjo*.

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. A warrantless search is presumed unreasonable unless it falls within a recognized exception to the warrant requirement. *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012). However, neither a warrant nor warrant exception is required for an *exterior* sniff of a car by a reliable drug dog. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). This is so because there is no legitimate interest in possessing contraband. Because a sniff by a well-trained dog only reveals the presence of contraband, it does not compromise a legitimate privacy interest and is not a "search." *Id.*

We agree with Howard that *Naranjo* is inconsistent with *Jones* and that Pico's entry was a search. *Jones* is clear that for purposes of the Fourth Amendment, a search occurs when the government trespasses in order to obtain information. In *State v. Randall*, ___ Idaho ___, ___ P.3d ____ (2021), also decided today, we rejected the rule in *Naranjo* because there is no asterisk to the Fourth Amendment excusing the unconstitutional acts of law enforcement when they are accomplished by means of a trained dog. Here, much as in *Randall*, the drug dog entered the car during a sniff, an activity that is self-evidently conducted for the purpose of obtaining information. Further, the entry was a trespass because it was without Howard's express or implied consent. Thus, much as in *Randall*, a search occurred in this case to which the Fourth Amendment applies.

However, this case differs significantly from *Randall* in one way—the degree of the dog's intrusion. In *Randall,* the dog leapt through an open window, fully entering the car, and it remained in the car until it alerted to the presence of narcotics. Here, only Pico's nose entered the

3

car and the entry was momentary. We take this opportunity to observe there is no de minimis exception to the test articulated in *Jones*.

Though not squarely on point, and certainly not binding on this Court, we find that the Sixth Circuit Court of Appeals decision in *Taylor v. City of Saginaw*, 922 F.3d 328 (6th Cir. 2019) is instructive. In *Taylor*, the city enforced time limits for parking by tire chalking, i.e., placing chalk marks on the tread of car tires—marks that rub off as soon the cars are moved—to determine whether the cars have remained in place longer than allowed. *Id.* at 330–31. The plaintiff, apparently a frequent recipient of parking tickets, alleged that the practice violated her Fourth Amendment rights. *Id.* The city responded, in part, by arguing that chalking was not a search for purposes of the Fourth Amendment. *Taylor v. City of Saginaw*, No. 17-CV-11067, 2017 WL 4098862, *1 (E.D. Mich. Sept. 15, 2017), *rev'd and remanded*, 922 F.3d 328 (6th Cir. 2019). The Sixth Circuit disagreed. It held that chalking, though a slight interference with private property, was nevertheless an interference for the purpose of obtaining information and therefore a "search" under *Jones.* 922 F.3d at 332–33.

Like the marking of chalk on a car tire's tread, a dog's nose passing through an open window is a minimal interference with property. But the right to exclude others from one's property is a fundamental tenet of property law, and we see no room in the *Jones* test for a de minimis exception. Further, by simply adhering to the *Jones* test as it is formulated, courts, law enforcement, and the public benefit from the clarity of a bright line rule for determining when a non-search exterior sniff becomes a search. We hold: when a law enforcement drug dog intrudes, to any degree, into the interior space of a car during a drug sniff, without express or implied consent to do so, a search has occurred under the Fourth Amendment.

**B. The State failed its burden to demonstrate probable cause existed before the search.**

Though we conclude a warrantless search occurred, the State maintains the search was constitutional because the automobile exception to the warrant requirement still applies. Under the automobile exception, officers may conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or evidence of a crime. *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012). "Probable cause is established when the totality of the circumstances known to the officer at the time of the search would give rise—in the mind of a reasonable person—to a fair probability that contraband or evidence of a crime will be found in a

4

particular place." *Id.* A reliable drug dog's alert, standing alone, is sufficient to establish probable cause for a warrantless search of a car. *Id.*

Though Pico did not perform his trained alert before entry, the State argues that Officer Knisley's testimony about Pico's pre-entry behavior allows us to determine that probable cause existed to trigger the exception. On the record before us, we hold it did not.

Because the district court found no search had occurred under *Naranjo*, it did not consider whether probable cause existed before the entry. However, whether probable cause exists is a question of law we review de novo with deference given to the facts found by the trial court. *State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989). At the suppression hearing, Officer Knisley testified that Pico was a certified patrol dog trained to locate methamphetamine, marijuana, cocaine, and heroin. She also testified about Pico's trained final alert, his behavior during the search, and why she believed Pico had detected the scent of narcotics before the entry:

> THE PROSECUTOR: And your dog spent some time at the door handle, as you testified, correct?
>
> OFFICER KNISLEY: Yes.
>
> Q. And then we hear you say something to the effect of "show me," correct?
>
> A. Yes.
>
> Q. When you say "show me" to your dog, what does that mean?
>
> A. If Pico is in odor, he sometimes will stop and freeze.
>
> THE COURT: I'm sorry, ma'am? I didn't hear that. If he's what?
>
> OFFICER KNISLEY: When he's in odor, narcotic odor, his behavior changes will lead up to and he'll stop and stare, and I've tried to work for him to — his final response to be a sit, so I basically redirect him to find — to get as close as he can to source, which is show me, keep searching, get as close as you can to source, and he works as best as he can, and he'll either sit or lay down position.
>
> THE PROSECUTOR: Okay. And so at that point, he sniffs the door handle, he's in odor, he's picked up a scent, as you put it, and he's standing there looking maybe at you, maybe at the door. He's still standing on all fours; is this correct?
>
> OFFICER KNISLEY: Yes.

5

Q. And when you are looking for a finished alert or a positive alert, or when you're waiting for him to finish indicating, what exactly are you looking for?

A. His final alert that's been trained into him is to lie down, sit, or stand depending on the environment he's in and what position he can get into for his final.

Q. Okay. And so when he's still standing there on all fours, that's not his final alert?

A. It's not the one that we've trained into him, but he's — over time the dogs tend to cheat the system, and he'll stop, and he looks back at me for his reward, his toy, once he's in odor.

Q. Okay. So you testified that at that point, despite him not sitting and indicating what his trained final alert is —

A. Yes.

Q. — you believe that he had already picked up the scent of controlled substance?

A. Yes.

Q. And he was already showing indications that it was present?

A. Yes, sir.

Q. And he was looking back to you for his reward?

A. Correct.

Q. And did you give him his reward at that point?

A. I did not at that point.

Q. And that's when you said, "Show me," correct?

A. Yes, sir.

Q. And as you testified earlier, that was with the intention of having your dog finish as he was trained?

A. Yes.

Q. Okay. And was it at that point when he lifted himself up, put his paws on the vehicle, and followed the scent into the vehicle?

6

A. Yes.

. . .

Q. And then after he removed his nose from the vehicle and his paws off the vehicle, is that when your dog sat and gave his final response or indication?

A. Yes, sir.

Because the district court expressly found Officer Knisley's testimony was credible, and there is no assertion that this finding was clearly erroneous, we defer to that finding.

Knisley's testimony makes clear that she believed Pico had detected the odor of narcotics prior to entry. But Knisley's subjective belief is not relevant to a probable cause determination:

> When reviewing an officer's actions the court must judge the facts against an objective standard. That is, "would the facts available to the officer at the moment of the seizure or search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate." Because the facts making up a probable cause determination are viewed from an objective standpoint, the officer's subjective beliefs concerning that determination are not material.

*State v. Amstutz*, ___ Idaho ___, ___, ___ P.3d ___, ___ (2021) (quoting *State v. Julian*, 129 Idaho at 136–37, 922 P.2d at 1062–63 (1996) (citations omitted). Here, considering the material evidence, we cannot conclude probable cause existed.

When the statements of Officer Kinsley's belief are excluded from our consideration of her testimony, these are the facts that remain: (1) Pico is a certified drug dog trained to sit or lie down to indicate the presence of drugs; (2) Pico did not sit or lie down before entering the car; (3) at least sometimes Pico "freezes" or tries to "cheat the system" by looking at the officer for his reward before indicating as he has been trained to do; (4) Pico froze and looked back at the officer before entering the car. From these facts, we cannot know whether Pico's freezing and looking back was a reliable indication that narcotics were present, and we cannot determine whether Officer Kinsley's subjective belief was objectively reasonable. For instance, how often does Pico freeze or look back at the officer before giving a final, trained alert? Does Pico only freeze when in odor? Does Pico only try to "cheat the system" when narcotics are present?

To be clear, we do not hold that answers to the above questions would be sufficient to establish probable cause. Nor do we suggest that the absence of a trained alert is *ipso facto* an absence of probable cause. It is simply the lack of objective indicia of reliability that undergirds our decision today. Instead, our purpose in asking these questions is to highlight that courts are

7

not equipped to independently interpret trained dogs' behavior. Without objective evidence bearing on the reliability of Pico's behavior before his trained alert, we are left with little more than our intuition about the significance of that behavior. Our intuition is not evidence. The State has not met its burden to show that a warrant exception applies. Therefore, we reverse the district court's denial of Howard's motion to suppress.

### C. The State may not raise a lack of Fourth Amendment standing for the first time on appeal.

The State argues, for the first time on appeal, that Howard lacks standing to assert a violation of his Fourth Amendment rights. To have standing to claim the protection of the Fourth Amendment, a defendant bears the burden to demonstrate a privacy interest in the place searched. *State v. Mann*, 162 Idaho 36, 41, 394 P.3d 79, 84 (2017). Because Howard did not produce evidence at the suppression hearing that he was authorized to drive the car, the State argued that he had no legitimate expectation of privacy in the car and has no basis to seek suppression of evidence found within it. The State acknowledges it did not raise the issue of standing before the district court but argues that the Court of Appeals decision in *State v. Hanson*, 142 Idaho 711, 132 P.3d 468 (Ct. App. 2006), "shows that that fact is irrelevant." We disagree.

We have recently and repeatedly affirmed that we place "a premium on counsel presenting the facts and law that it chooses to support its position in the trial court." *State v. Hoskins*, 165 Idaho 217, 226, 443 P.3d 231, 240 (2019). In *Hoskins*, we held that the State could not raise new grounds for a warrant exception on appeal. *Id.* In *State v. Wolfe*, 165 Idaho 338, 342, 445 P.3d 147, 151 (2019), we held the State cannot argue the independent source doctrine applies for the first time on appeal. In *State v. Fuller*, 163 Idaho 585, 590, 416 P.3d 957, 962 (2018), we held that the State cannot argue a new basis for reasonable suspicion on appeal. And in *State v. Garcia-Rodriguez*, 162 Idaho 271, 276, 396 P.3d 700, 705 (2017), we held the State cannot present new justifications for the lawfulness of an arrest on appeal. While the State is correct that the decision of the Court of Appeals fourteen years ago in *Hanson* would allow it to raise its standing argument for the first time on appeal, this Court has never endorsed this view and will not do so today.

Consistent with the decisions of this Court, we hold the State cannot challenge a defendant's Fourth Amendment standing for the first time on appeal. Our longstanding preservation requirement promotes the fair and efficient determination of matters before our

courts by dividing fact-finding and law-stating functions between the trial courts and appellate courts, respectively. By insisting that facts and arguments first be developed in the trial courts, we assure that the records in cases before us are adequate to allow just determinations. Likewise, by requiring, as far as possible, that the parties' arguments first be passed upon below, we benefit from the refinement of those arguments on appeal and the wisdom of the trial court in deciding the matter in the first instance. These are not mere courtesies to the Court, but vital aspects of the appellate process. *See Garcia-Rodriguez*, 162 Idaho at 276, 396 P.3d at 705 (quoting *Smith v. Sterling*, 1 Idaho 128, 131 (1867)); *see also State v. Islas*, 165 Idaho 260, 265, 443 P.3d 274, 279 (Ct. App. 2019) (providing a detailed discussion of the origin and function of the preservation doctrine).

The State argues that our decisions in *Hoskins*, *Wolfe*, *Fuller*, and *Garcia-Rodriguez* are distinguishable from the present case because they involved situations where the State bore the burden to show that a seizure was justified or that a warrant exception applied, whereas Howard bore the burden to establish standing in this case. Thus, the State argues it need not have objected to Howard's alleged lack of standing below to complain of it on appeal. At oral argument, counsel for the State likened its Fourth Amendment standing challenge to a defendant's challenge to the sufficiency of the evidence on appeal from a criminal conviction:

> Even if a defendant does not . . . make a motion for a judgment of acquittal . . . does not argue that the evidence on a particular element of a crime was insufficient, the defendant can always raise the sufficiency of the evidence as to that element on appeal. There's no requirement, in advance, to raise at trial the sufficiency of the evidence. You can raise it on appeal. This is that.

But this is not that. The right of a criminal defendant to challenge the sufficiency of evidence on appeal stems from the due process requirement that the government prove guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 363 (1970). Plainly, our preservation requirement must yield where doubt persists that the government has met its constitutional burden. However, where the government fails to object to a defendant's Fourth Amendment standing in the trial court, there is no comparable constitutional imperative requiring an exception to the preservation doctrine. Indeed, Fourth Amendment standing is regarded by many courts as an issue that is waived if not raised. *See e.g.*, *United States v. Ross*, 963 F.3d 1056, 1065 (11th Cir. 2020) ("All agree that in the typical Fourth Amendment 'standing' case . . . the government waives any standing objection that it fails to raise."); *United States v.*

*Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) ("[A]lthough [the defendant's] standing to challenge the search was debated before the district court, the government has not appealed the district court's determination that standing existed and has thus waived the issue."); *United States v. Huggins*, 299 F.3d 1039, 1050 n.15 (9th Cir. 2002) ("Standing to challenge a search or seizure is a matter of substantive Fourth Amendment law rather than of Article III jurisdiction, . . . meaning that the government can waive the standing defense by not asserting it . . . .").

Finally, we observe that this case illustrates the unsuitability of our determining a fact-intensive issue like Fourth Amendment standing without appropriate factual development below. According to the State, whether Howard has standing depends on whether he owned or was authorized to drive the car. Because the State argues that no evidence establishes Howard was authorized to drive the car, and the probable cause affidavit of the officer who arrested Howard establishes he was not the car's owner, Howard does not have Fourth Amendment standing. Howard, on the other hand, points to the same probable cause affidavit to argue he did have standing. The affidavit indicates that police contacted the owner of the car and the owner arrived at the scene to retrieve it. Thus, Howard maintains "[i]f the owner had not given Mr. Howard permission to drive the car, the officer presumably would have reported that or even arrested Mr. Howard for additional offenses." These few facts are the whole of the evidence in the record that bears on whether Howard had standing to challenge the search of the car. We would be no more certain of doing justice by deciding the issue on the record before us than by tossing a coin.

"Our adversarial system of justice demands active and agile counsel at all levels." *Hoskins*, 165 Idaho at 226, 443 P.3d at 240. Indeed, the quality of our review depends on it. Whether the decision not to litigate the issue of standing below was the product of a strategy, of an oversight, or—as seems to be the case from the record—of an assumption by all parties that Howard had standing, we will not venture into the thicket to decide the issue for the first time on appeal. The initial resolution of fact-intensive questions is the province of our capable trial judges.

## IV.    CONCLUSION

The decision of the district court denying Howard's motion to suppress evidence is reversed and the judgment of conviction is vacated. The case is remanded for further proceedings consistent with this opinion.

Justice MOELLER, and Justice Pro Tem BURDICK CONCUR.

STEGNER, Justice, concurring.

I concur with the Court's decision that an illegal search occurred in this case under the Fourth Amendment to the United States Constitution. However, for the reasons set forth in my concurrence in *State v. Randall*, ___ Idaho ___, ___P.3d ___ (2021), I would also hold that an illegal search occurred on independent state law grounds under Article 1, section 17 of the Idaho Constitution.

BEVAN, Chief Justice, dissenting in part.

I dissent from Parts III.A and III.B of the majority's decision. Unlike the majority, I do not believe that a drug-detection dog's instinctive action instantaneously transmutes a warrantless, exterior sniff into an unconstitutional search. *See State v. Randall*, ___ Idaho ___, ___, ___P.3d ___, ___ (2021) (Bevan, C.J., dissenting). I would hold that the district court correctly determined that *State v. Naranjo*, 159 Idaho 258, 359 P.3d 1055 (Ct. App. 2015) applied and would affirm the denial of Howard's motion to suppress on that basis without reaching the question of whether probable cause existed before Pico's alert.