**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49743**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: February 2, 2023 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| JOSHUA T. RICKS, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cynthia Yee-Wallace, District Judge.

Judgment of conviction for possession of a controlled substance, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant. Ben P. McGreevy argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

BRAILSFORD, Judge

Joshua T. Ricks appeals from his judgment of conviction for possession of a controlled substance, Idaho Code § 37-2732(c). Ricks argues the district court erred in denying his motion to suppress evidence. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2021, an officer stopped a vehicle driven by Ricks for having an expired registration. During the stop, Ricks disclosed that his driver's license was also expired. The officer cited Ricks for driving without privileges and had him exit the vehicle for an explanation of the citation. While the officer was explaining the citation, Deputy Orcutt and his drug dog arrived at the scene and began an exterior drug-detection sniff of Ricks' vehicle. During the sniff, the dog jumped on the rear-passenger door, jumped on the front-passenger door, and then inserted his nose

1

into the open front-passenger window. After entering the vehicle, the dog gave a final alert when he "sat and began to stare at the window and then back at [Deputy Orcutt]." A subsequent search of the vehicle revealed narcotics and drug paraphernalia.

The State charged Ricks with possession of a controlled substance and possession of drug paraphernalia, and he filed a motion to suppress. Relying on two recent Idaho Supreme Court cases, *State v. Randall*, 169 Idaho 358, 496 P.3d 844 (2021), and *State v. Howard*, 169 Idaho 379, 496 P.3d 865 (2021), *cert. denied* (Oct. 3, 2022) (No. 21-975), Ricks argued the drug dog's entry into Ricks' vehicle was a warrantless search in violation of the Fourth Amendment. The State opposed the motion, arguing probable cause existed before the dog stuck his nose in the window and justified the search under the automobile exception. At an evidentiary hearing, Deputy Orcutt testified, and the video from his body camera showing the sniff was admitted into evidence.

In addressing Ricks' suppression motion, the district court considered whether the drug dog's "change in behavior that signals he is pursuing an odor he is trained to detect" is "sufficient to find probable cause, even though no final alert" was made. The court concluded the dog's change in behavior was sufficient to establish probable cause. In support, the court made numerous factual findings, including that:

> [I]t was undisputed that Deputy Orcutt and Django [the dog] are certified as a narcotics team, and that Django is certified to detect marijuana, cocaine, heroin, and methamphetamine. It was similarly undisputed that Django detects odors accurately. Django is trained to sniff where the Deputy points, unless [the dog] detects the odor of narcotics, in which case he is trained to follow the odor to its source. Deputy Orcutt looks for distinct changes in behavior when Django is working, including: head snaps, whining, breathing, tail and excitement to signal that Django is in odor. Deputy Orcutt testified that when Django jerked past his hand and went to the passenger side of the car, this change in behavior signaled that Django had detected the odor of narcotics.

The court further found that Deputy Orcutt's testimony was credible and that his body camera video corroborated his testimony.

Subsequently, Ricks pled guilty conditionally to possession of a controlled substance and reserved his right to appeal the denial of his suppression motion. Ricks timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by

2

substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Ricks challenges the district court's conclusion that probable cause justified the search. Ricks does not challenge any particular factual finding as erroneous, however. Rather, he argues that "the district court erroneously considered Deputy Orcutt's subjective belief that the drug dog had detected the odor of narcotics" before entering the vehicle and that "this case is on all fours" with the Idaho Supreme Court's decision in *Howard*, 169 Idaho at 384, 496 P.3d at 870 (concluding State failed to meet burden to show probable cause).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and, therefore, violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). A reliable drug dog's sniff of the exterior of a vehicle is not a search under the Fourth Amendment and does not require either a warrant or an exception to the warrant requirement. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). The Idaho Supreme Court has held, however, that a dog's trespass into the interior of a vehicle during an exterior sniff converts a nonsearch into a warrantless search requiring probable cause. *Randall*, 169 Idaho at 367, 496 P.3d at 853. Further, the Court has concluded that no de minimis exception exists to the rule that a dog's trespass is a search. *Howard*, 169 Idaho at 382, 496 P.3d at 868. Rather, a dog's entry into a vehicle constitutes a warrantless search regardless of "the degree of the dog's intrusion" and even if that intrusion is only "momentary." *Id.* Accordingly, to avoid a Fourth Amendment violation, any entry by a dog into the interior of a vehicle during a sniff requires either consent, a warrant, or probable cause. *Randall*, 169 Idaho at 370, 496 P.3d at 856.

The automobile exception to the warrant requirement allows police to search a vehicle without a warrant when there is probable cause to believe the vehicle contains contraband or evidence of a crime. *United States v. Ross,* 456 U.S. 798, 823-24 (1982). "Probable cause is

established when the totality of the circumstances known to the officer at the time of the search would give rise--in the mind of a reasonable person--to a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012). "Probable cause is a flexible, common-sense standard," requiring only "a practical, nontechnical probability that incriminating evidence is present." *Id.* In the context of a drug dog's entry into the interior of a vehicle, the proper inquiry is whether the officer had probable cause to believe illegal drugs were in the vehicle before the dog's entry. *Randall*, 169 Idaho at 369, 496 P.3d at 855.

In this case, the district court framed the issue for resolving Ricks' suppression motion as:

> whether a drug detection dog's change of behavior that signals he is pursuing an odor he is trained to detect (also referenced herein as a "general alert") is sufficient to find probable cause, even though no final alert (also referenced herein as "pinpoint indication" or "final indication") is made, prior to the search.[1]

In resolving this issue, the court relied on nonbinding case law from other jurisdictions and found that this case is "similar" to cases "in which courts have found probable cause to exist when a drug dog makes a general alert that the dog had detected the odor of narcotics, even where a final alert is not made." *See United States v. Holleman*, 743 F.3d 1152, 1154 (8th Cir. 2014) (relying in part on dog's conduct of "detailing" area twice before search to conclude probable cause existed); *United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013) (ruling evidence from trained handler about dog's "signaling" behavior can be basis for probable cause); *United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009) (holding that "probable cause was satisfied by [the dog's] alert to the odor of an illegal substance in the vehicle and that it was not necessary for the dog to indicate that exact source of the odor."); *see also State v. Martinez*, 129 Idaho 426, 431-32, 925 P.2d 1125, 1130-31 (Ct. App. 1996) (relying in part on dog's change in behavior indicating presence of drugs to conclude probable cause existed).

On appeal, Ricks does not challenge the district court's reliance on a rule that probable cause may exist even if the drug dog has not given its final indication pinpointing the odor's

---

[1]    As the district court's decision suggests, the case law discussing dog sniffs frequently uses different, imprecise, or undefined nomenclature. Similar to the district court, we use the phrase "general alert" or the term "alert" to mean a dog's behavior signaling the dog detects the odor of drugs he is trained to locate. We use the phrase "final indication" or the term "indication" to mean the dog's trained response pinpointing the strongest source of the odor. *See United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009) (clarifying nomenclature).

strongest source. Indeed, Ricks notes this rule "agrees with *Howard*," in which the Idaho Supreme Court stated that it was not "suggest[ing] that the absence of a trained alert is *ipso facto* an absence of probable cause." *Howard*, 169 Idaho at 384, 496 P.3d at 870; *see also Randall*, 169 Idaho at 368, 496 P.3d at 854 (stating "no evidence supported that [the dog] entered Randall's car *because* [the dog] detected the odor of narcotics"). We agree that language in *Randall* and *Howard* indicates the Idaho Supreme Court would adopt a rule allowing for probable cause based on a dog's general alert and despite the absence of a dog's final indication. Moreover, a rule permitting a probable cause finding where a trained drug dog provides a general alert to the presence of drugs would be in accord with existing case law concluding probable cause exists where an officer smells the odor of drugs. *State v. Gonzales*, 117 Idaho 518, 519, 789 P.2d 206, 207 (Ct. App. 1990) (noting probable cause established when trained officer detects smell of marijuana in vehicle). Accordingly, we consider whether substantial evidence supports the district court's conclusion that probable cause existed for a warrantless search before the dog's nose entered Ricks' vehicle, even though the dog had not yet given its final indication identifying the odor's strongest source.

On the issue of a drug dog's reliability for establishing probable cause, the United States Supreme Court decision in *Florida v. Harris*, 568 U.S. 237 (2013), is instructive. The Court in *Harris* "consider[ed] how a court should determine if the 'alert' of a drug-detection dog during a traffic stop provides probable cause to search a vehicle." *Id.* at 240. In that case, the dog conducted an exterior "free air sniff" of a lawfully stopped vehicle and "alerted at the driver's-side door handle--signaling, through a distinctive set of behaviors, that he smelled drugs there." *Id.* The officer concluded this "alert" provided probable cause, and he searched the vehicle. *Id.* Although the officer did not discover drugs during the search, he located ingredients for making methamphetamine. *Id.* at 240-41.

At the suppression hearing in *Harris*, the State offered evidence of the drug dog's training programs, certification, weekly training exercises, and the "really good" results from those weekly trainings. *Id.* In opposition, Harris presented evidence that the dog's certification had expired the year before the search at issue and that the dog had previously "alerted" twice on vehicles "in the field" after which no drugs were located in those vehicles. *Id.* at 242. The trial court denied Harris's suppression motion, and the Florida Supreme Court reversed, ruling the State "needed to produce a wider array of evidence related to the dog's reliability" to establish probable cause. *Id.*

5

On appeal, the United States Supreme Court rejected the Florida court's "strict evidentiary checklist." *Id.* at 244. The Court noted that:

> The question--similar to every inquiry into probable cause--is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.

*Id.* at 248. In answering this question, the Court noted that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert" and that "if a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.* at 246-47. The Court identified the adequacy of certification, the performance of the dog or his handler during assessments, their performance in the field, and the officer's cues to the dog during the search as examples of potentially conflicting evidence. *Id.* at 247. Finally, the Court ruled that "if the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause." *Id.* at 248. It ruled that "viewed alone, [the dog's] training record--with or without the prior certification--sufficed to establish [the dog's] reliability," and thus probable cause existed. *Id*. at 249.

Absent from the *Harris* Court's analysis, however, is any discussion of the distinction between a dog's "general alert," meaning a dog's behavior signaling he detects the odor of drugs he is trained to locate, and a "final indication," meaning a dog's trained response pinpointing the odor's strongest source. *See Parada*, 577 F.3d at 1282 (clarifying nomenclature). Rather, the Court only generally references an "alert" by the dog "signaling through a distinctive set of behaviors" that he detected the odor of drugs. *Harris*, 568 U.S. at 240. As the district court noted, many courts have recognized the distinction between a general alert signaling the presence of an odor of drugs from a subsequent final indication through a trained response pinpointing the odor's strongest source, albeit using various different terminology. Meanwhile, other courts appear to conflate or at least not distinguish these behaviors. Drawing the distinction, however, between a general alert and a final indication--as the district court did in this case--is essential for analyzing whether a drug dog's behavior before entering the vehicle and before giving a final indication establishes probable cause.

The Idaho Supreme Court's decision in *Howard* appears to recognize the distinction between a drug dog's general alert behavior and his trained final indication, referencing the latter as a dog's "trained alert." *Howard*, 169 Idaho at 384, 496 P.3d at 870 (noting "the absence of a trained alert is [not] *ipso facto* an absence of probable cause"). The Court has also noted the testimony of the dog's handler is important for proving a dog's general alert before he entered into the vehicle established probable cause. For example, in *Randall* the Court stated the drug dog handler's testimony was "necessary" to explain "why [the dog's] behavior was an objectively reliable indication that narcotics were present" before the dog entered the vehicle. *Randall*, 169 Idaho at 369, 496 P.3d at 855; *see also Howard*, 169 Idaho at 384, 496 P.3d at 870 ("Without objective evidence bearing on the reliability of [the dog's] behavior, we are left with little more than our intuition about the significance of that behavior."); *see also Thomas*, 726 F.3d at 1098 ("Evidence from a trained and reliable handler about the alert behavior he recognized in his dog can be the basis for probable cause.").

Other courts addressing a drug dog's behavior generally alerting (versus finally indicating) to the presence of an odor of drugs focus on the dog's behaviors signaling he is detecting an odor of drugs, such as the dog's breathing, posture, and body movements when he is sniffing a vehicle. *See, e.g.*, *Holleman*, 743 F.3d at 1154 (noting dog stopped "dead in his tracks" and began "to really detail the area"); *Thomas*, 726 F.3d at 1087 (noting the "dog's tail and ears went up, his posture and breathing pattern changed, and he started 'air-scenting'"); *Parada*, 577 F.3d at 1281 (noting dog "alerted on the driver's side front door by stiffening his body, breathing deeply, and attempting to jump into the window"); *Steck v. State*, 197 A.3d 531, 536 (Md. Ct. Spec. App. 2018) (noting sniffing and change in breathing, posture, and general behavior); *cf. Harris*, 568 U.S. at 240 (referencing "signaling, through a distinctive set of behaviors"). This type of signaling behavior is in contrast to a final indication (or "trained alert" as the *Howard* Court referred to it), such as a dog sitting, lying down, or otherwise pointing to the odor's strongest source. Like courts in other jurisdictions, we conclude a dog's signaling behavior of a general alert--such as the dog's breathing, posture, body movements, and verbal responses--can constitute probable cause.

Further, we conclude substantial evidence supports the district court's probable cause finding in this case. During the suppression hearing, Officer Orcutt testified that he previously worked for six years "in the K-9 unit" in another state; is certified in Idaho "as a K-9 handler" and "as a team" with his drug dog; has trained with the dog for about 160 hours; passed the Idaho

7

POST Narcotics Detection Standards; has confidence in the accuracy of his dog, who is trained to detect the odors of marijuana, cocaine, heroin, and methamphetamine; has not had any problems with the dog giving "false positives"; and trains a minimum of four hours a week with his dog and "K-9 instructors," who monitor their actions. As the district court noted, Ricks did not challenge this evidence proving the dog's reliability. *See Harris*, 568 U.S. at 246 ("[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert.").

Additionally, evidence of the drug dog's signaling behavior generally alerting to the odor of drugs emanating from the vehicle before he entered the vehicle supports the district court's probable cause finding. Deputy Orcutt testified about his dog's "distinct change of behavior" as an alert. According to Deputy Orcutt, this signaling behavior can include "a head snap," "whining," "breathing," tail movement, and excitement. Deputy Orcutt explained that in conducting a dog sniff, Deputy Orcutt either starts at the front or the back of the vehicle and has the dog sit "to reset" him and to let him know "we are gonna be doing a search." Further, Deputy Orcutt explained his dog is trained to sniff at the points at which Deputy Orcutt indicates, unless the dog detects the odor of drugs, in which case he follows the odor to its source. Regarding the dog sniff at issue, Deputy Orcutt testified that when he pointed to the rear bumper for the dog to sniff, the dog "blew past" the cue; the dog moved to the vehicle's passenger side as the dog's "whining" and "excitement" "began to increase"; and as the dog approached the open passenger window, Deputy Orcutt "could hear [the dog's] excitement building, his tail, the intensity." According to Deputy Orcutt, this behavior signaled the dog was alerting on the odor of drugs before the dog entered the open window. Like the district court, we conclude Deputy Orcutt's testimony about the dog's signaling behavior provided objective evidence of the dog's general alert to the presence of the odor of drugs emanating from the vehicle before the dog entered the vehicle and supports a probable cause finding.

Contrary to Ricks' argument, the facts in this case are distinguishable from those in *Howard* in which the Idaho Supreme Court concluded the State failed to establish probable cause. In that case, the officer equivocally testified her dog "at least sometimes" freezes and tries to "cheat the system." *Howard*, 169 Idaho at 384, 496 P.3d at 870. In contrast, Deputy Orcutt's testimony neither shows his dog's conduct is sometimes inconsistent nor equivocates that his dog

demonstrated signaling behavior in this case, showing the dog was generally alerting to the odor he is trained to detect emanating from the vehicle before he entered the vehicle.

We also reject Ricks' argument that "the evidence shows that the dog ignored its own training," suggesting the dog was not alerting to the odor of drugs. Deputy Orcutt testified that when the dog "blew past" the cue to sniff the bumper, "[t]hat's not the way we train." We construe Deputy Orcutt's testimony, as the district court did, to mean that the dog is trained to sniff where Deputy Orcutt points *unless* the dog detects the odor of drugs, in which case he is trained to follow the scent to the point of its strongest source. The dog's behavior in this case comported with this training, both according to Deputy Orcutt's testimony and a review of his body camera video.

Finally, that Deputy Orcutt testified he personally believed the dog was alerting on the odor of drugs before entering the vehicle does not undermine the district court's probable cause finding. The proper inquiry is whether objective evidence supports Deputy Orcutt's belief. The mere fact that Deputy Orcutt expressed his subjective belief when explaining the objective evidence is not a basis to reject that objective evidence. An officer's subjective belief may often coincide with the objective evidence. Nor was Deputy Orcutt required to testify, as Ricks argues, that "a reasonable person could objectively rely on his dog's pre-entry behavior." Such testimony does not supplant the court's legal decision about whether a reasonable person would have concluded that, under the totality of the circumstances known to the officer at the time of the search, there was a fair probability of finding contraband or evidence of a crime in a particular place. *Howard*, 169 Idaho at 383, 496 P.3d at 869 (noting existence of probable cause is legal question); *Anderson*, 154 Idaho at 706, 302 P.3d at 331 (defining probable cause).

**IV.**

**CONCLUSION**

Substantial evidence supports the district court's probable cause finding. Accordingly, we affirm the court's order denying Ricks' suppression motion and his judgment of conviction.

Judge GRATTON and Judge HUSKEY **CONCUR**.

9