# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51345

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 16, 2025** |
| Plaintiff-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| JASEN HEATH ANDERSON, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Roger B. Harris, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>remanded for further proceedings</u>.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for appellant. Kale D. Gans argued.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for respondent. Kierra Mai argued.

_____

TRIBE, Judge

The State of Idaho appeals from the district court's order granting Jasen Heath Anderson's motion to suppress. We reverse and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Baisch stopped a vehicle driven by Anderson for exceeding the posted speed limit, failing to maintain his lane, and operating his cell phone while driving. Officer Baisch approached Anderson's vehicle and noticed many items, which gave the vehicle a "lived-in" look, as if Anderson was not stopping on long-distance travel. As Anderson was searching for his insurance information on his phone, Officer Baisch asked Anderson to step out of his vehicle, which he did. By the time Anderson exited his vehicle, Officer Carlson had arrived as backup. Once Anderson found his insurance information, Officer Baisch handed Anderson's license and registration to

1

Officer Carlson so he could assume the role of the investigating officer for the initial violations. Officer Carlson began checking Anderson's information.

While Officer Carlson was in Officer Baisch's vehicle checking Anderson's information, Officer Baisch deployed his K-9. As the K-9 sniffed the exterior of Anderson's vehicle, and before the K-9's nose touched the vehicle on the passenger door seam, Officer Baisch believed the K-9 showed multiple general alert behaviors to the presence of controlled substances. When Anderson was told the K-9 alerted and the vehicle would be searched, Anderson admitted there was a methamphetamine pipe in the vehicle. At this time, the officers conducted a search of the interior of the vehicle and found a pipe which contained residue that tested positive for methamphetamine.

Anderson was charged with possession of a controlled substance (Idaho Code § 37-2732(c)(1)), and the State filed a persistent violator sentence enhancement (I.C. § 19-2514). Anderson filed a motion to suppress, contending that the stop was extended without reasonable suspicion and that the K-9's free-air sniff was converted into a warrantless search when the K-9 trespassed against the exterior of his vehicle. The State responded that the stop had not been unlawfully extended and that the alleged trespass occurred after the K-9 had alerted. The district court held a hearing. The district court rejected Anderson's claim that the traffic stop was unlawfully prolonged or delayed but, at an ensuing hearing, granted the motion to suppress based on *State v. Dorff*, 171 Idaho 818, 526 P.3d 988 (2023). Specifically, the district court found that the K-9's "indication was one continuous motion when he pressed the nose to the vehicle and then gave his final alert." The State appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, the State argues that, because the K-9 alerted and established probable cause before the K-9 touched Anderson's vehicle, the district court erred in determining there was an unlawful trespass. Anderson argues the district court correctly granted the motion to suppress. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and, therefore, violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). A reliable drug dog's sniff of the exterior of a vehicle is not a search under the Fourth Amendment and does not require either a warrant or an exception to the warrant requirement. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

Article I, Section 17 of the Idaho Constitution, similarly provides that:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

The automobile exception to the warrant requirement allows police to search a vehicle without a warrant when there is probable cause to believe the vehicle contains contraband or evidence of a crime. *See United States v. Ross*, 456 U.S. 798, 823-24 (1982). Probable cause is established when the totality of the circumstances known to the officer at the time of the search would give rise--in the mind of a reasonable person--to a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012). Probable cause is a flexible common-sense standard, requiring only a practical, nontechnical probability that incriminating evidence is present. *Id.*

In *Florida v. Harris*, 568 U.S. 237 (2013), the United States Supreme Court noted that evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert and that if a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. *Id.* at 246-47. Finally, the Court in *Harris* ruled that, if the State has produced proof from controlled settings that a dog

performs reliably in detecting drugs and the defendant has not contested that showing, the court should find probable cause. *Id.* at 248.

The Idaho Supreme Court has recognized the distinction between a drug dog's general alert behavior and the dog's trained final indication. *State v. Howard*, 169 Idaho 379, 384, 496 P.3d 865, 870 (2021). The Court noted that the absence of a final indication is not *ipso facto* an absence of probable cause. *Id.* The Court also noted the testimony of the dog's handler is important for proving a dog's general alert to establish probable cause. The Idaho Supreme Court in *State v. Randall*, 169 Idaho 358, 369, 496 P.3d 844, 855 (2021), stated the drug dog handler's testimony was necessary "to explain why [the dog's] behavior was an objectively reliable indication that narcotics were present." *See also United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013) (holding that, "evidence from a trained and reliable handler about alert behavior he recognized in his dog can be the basis for probable cause"); *Howard*, 169 Idaho at 384, 496 P.3d at 870 (explaining that, "without objective evidence bearing on the reliability of [the dog's] behavior before his trained alert, we are left with little more than our intuition about the significance of that behavior").

In *State v. Ricks*, 173 Idaho 74, 539 P.3d 190 (Ct. App. 2023), this Court held that probable cause may exist even if the drug dog has not given its final indication pinpointing the odor's strongest source. This Court also held that the "language in *Randall* and *Howard* indicates the Idaho Supreme Court would adopt a rule allowing for probable cause based on a dog's general alert and despite the absence of a dog's final indication." *Ricks*, 173 Idaho at 77, 539 P.3d at 193. This Court concluded "a dog's signaling behavior of a general alert--such as the dog's breathing, posture, body movements, and verbal responses--can constitute probable cause." *Id.* at 79, 539 P.3d at 195.

At the conclusion of the hearing on the motion to suppress, the district court rejected Anderson's claim that the traffic stop was unlawfully "prolonged" or delayed because the "[K-9] had already alerted or indicated on the [vehicle]" when Anderson's information came back from dispatch. But the district court reserved ruling on what it perceived to be the real issue, stating that, "whether an alert, as has been argued, is different than an indication and if and when at what point that became probable cause to search the vehicle."

4

At a subsequent hearing, the district court took up the unresolved issue of Anderson's motion to suppress. The district court began by discussing Officer Baisch's reputation with the court. Without a specific statement that it found Officer Baisch credible, the district court stated, it didn't "find [Officer Baisch's] integrity to be an issue at all" and that he had "always been very straightforward." Regarding the K-9 sniff, the district court paraphrased Officer Baisch's testimony that the K-9 was exhibiting his usual tells and usual alerts--the K-9's mouth was closed, "his ears are back, and he begins to sniff vigorously" and "then [the K-9] went back," and "followed the drug odor to the passenger door seam, pressed his nose into the seam, and then came to a final indication by sitting."

The district court ruled that the K-9's alert behavior was insufficient to establish probable cause to search the vehicle. At the subsequent hearing on the motion to suppress, the following exchange occurred:

| [THE COURT:] | I'm granting the motion based upon the *Dorff* case. I've read it four or five times, and although Officer Baisch has indicated he believed he had probable cause to search because of an indication, the indication was one continuous motion when [the K-9] pressed the nose to the vehicle and then gave his final alert. If he didn't have a distinction between-- |
|---|---|
| [PROSECUTOR]: | Your Honor, the Court has those two mixed up. |
| THE COURT: | Okay. Well, either way-- |
| [PROSECUTOR]: | You said that the--there was probable cause once the [K-9] alerted. The [K-9] had not touched the vehicle when he alerted. |

The district court responded that it understood Officer Baisch and the prosecutor were saying there is a difference between an alert and a final indication, but the district court concluded that they occurred in one continuous motion which amounted to a trespass under *Dorff*, stating:

> Maybe I've got the terms backwards, but the [K-9] did it [in] one continuous motion, all for the purpose of trying to pick up the information needed to get his treat. It was all done in the process of trying to obtain information that will be utilized to show that there was, in fact, a scent that would give probable cause. I can't differentiate between the two. The [K-9] touched his nose to the vehicle in an effort to try and find the information. It was utilized for investigatory purpose. [*Dorff*] says that I have to suppress the information, and the motion to suppress is granted.

5

The State filed a motion requesting the district court to issue findings of fact regarding its oral decision on the motion to suppress. In its motion, the State pointed out that the district court granted the suppression motion but did not specifically set forth findings of fact in its oral decision in accordance with the Idaho Criminal Rules. The State requested that the district court adopt several items as the "basis of the finding of facts" for the district court's suppression ruling that included: (1) Officer Baisch's preliminary hearing testimony; (2) Officer Baisch's and Officer Carlson's suppression hearing testimony; and (3) the officers' on-body videos.

Upon granting the State's motion, the district court entered an order stating its findings of fact regarding its oral decision on the motion to suppress. The district court ordered that Officer Baisch's preliminary testimony and the suppression hearing testimonies of Officer Baisch and Officer Carlson and the video evidence, which was introduced into evidence at the suppression hearing, "are determined to contain the relevant findings of fact that were utilized in making the ruling on the motion to suppress." The district court held an additional hearing on Anderson's suppression motion. The district court determined it would "make a little bit more of a record" so that the parties could "understand [its] ruling" on the suppression motion. First, the district court found that "the whole analysis" under *Dorff* "depends upon whether" the K-9 trespassed against Anderson's vehicle while the officer was in the process of trying to obtain information related to possible drug involvement. Regarding the K-9's general alert versus his final indication, the district court acknowledged it may have got "the terms backwards" but maintained that the K-9's alert was insufficient for a finding of probable cause, stating:

> And as I outlined at my original findings--I don't want to get the terms backwards but I think I did last time. As the [K-9] went by the [vehicle], he went like this, he went by, his head turned back, even though his body was still going this way, that was what deemed to be an alert. Officer Baisch said that at that point he thought that he had probable cause to search.
> I watched the video and it looked like to me it was all in one fell swoop. He alerted, came back and touched his nose upon this door seam of the vehicle which would be a trespass, and then, I think the testimony was, at that point that confirmed his smell and he gave his final indication.
> Again, the *Dorff* case is not entirely--I understand the holding, I guess is the best way to put it. And to me, as I outlined before, it all happened so fast that the State argued, I know you did, that once the alert was given, he had [probable cause] and they could do whatever they wanted.

6

The district court disagreed with the State's argument that the K-9's alert provided probable cause for the search. The district court stated, "It all happened so fast." The district court found that "the additional split second" with the K-9 "touching his nose to discern and confirm its smell, then giving the final word was all one thing, that was a trespass and intermeddling," which was "all done in an attempt to find or obtain information or evidence against [Anderson] such that the *Dorff* case says that it has to be suppressed." The district court also questioned that, if the alert itself was sufficient for probable cause, what would be the purpose of ever having a final indication, asking: "if there's [probable cause], any time a dog alerts, why have him keep going?"[1] The district court concluded that the K-9 touching his nose to the vehicle constituted a trespass pursuant to *Dorff*, which meant that anything found as a result of that sniff violated Anderson's Fourth Amendment rights.

During the motion to suppress hearing, Officer Baisch testified that the K-9 touched Anderson's vehicle before giving his final indication. Officer Baisch also testified that the K-9's alert was separate behavior than the final indication and testified that the K-9 alerted before touching the vehicle. As stated above, the district court disagreed with the State's argument that the K-9's alert provided probable cause for the search. The district court erred because, in *Ricks*, this Court directly addressed that a K-9's alert provides probable cause for a search. Officer Baisch explained that the K-9 displays general alert behavior as follows: he would close his mouth and sniff the air vigorously with his ears laid back, display increased excitement and drool, "close his eyes as if he's following only his nose and not using his eyesight," and "bracketing" or "head kicks"--"where he changes direction with his head so quickly that his body continues one direction, almost as if his nose is leading him in the direction that the odor is coming from." Officer Baisch

---

[1]     During the motion to suppress hearing, after Officer Baisch testified regarding the physical differences between a K-9's alert and a K-9's indication, the district court asked, "why even have an indication?" Officer Baisch explained that there were multiple reasons: first, when you train a K-9 to get as close as possible to drugs, you don't want them to eat the drugs, therefore, they are taught an indication to prevent the K-9 from eating the drugs and harming themselves; second, K-9 handlers also utilize a passive indication to avoid property damage. If a K-9 is aggressive during its alert--and a sit, stare, or passive indication isn't trained into the K-9--the K-9 would scratch, bite, and tear up the outside of that vehicle. Officer Baisch summarized that K-9 handlers are trying to avoid harm to the K-9 and avoid damage to property.

7

testified that he had seen these patterns of behavior over the course of many years with the K-9, who averaged between 100 to 150 vehicle sniffs a year.

Substantial evidence supports a finding of probable cause in this case. The evidence can be seen in Officer Baisch's on-body video that was played at the suppression hearing and by reviewing Officer Baisch's testimony. Referring to the timestamp displayed on that video, Officer Baisch testified to when the alert behavior occurred and what it looked like, stating:

> Yeah, it's 0041 [the K-9] has stopped at the front bumper and he's turning around to come and search the passenger side of the vehicle.
> Here in a second you're going to see him cross the bottom of the screen. And in the bottom left-hand corner as he goes behind the door seam in between the rear passenger door and the front passenger door, you're going to see his neck make a very awkward kick back towards the door and his ears are going to lay flat against his head and you're going to see that his mouth is closed.
> At that point in time I have observed alert behavior. He then continues that behavior towards the vehicle where he presses his nose into the vehicle and indicates.

The evidence provided by the State at the suppression hearing, which the district court adopted in lieu of making its own factual findings, supports Officer Baisch's conclusion that the K-9 had alerted on the vehicle, giving him probable cause to search it. Officer Baisch testified that the K-9 gave a general alert on Anderson's vehicle before touching it, stating: "[s]hortly before [the K-9] touches the vehicle with his nose, and his nose only, he displayed alert behavior and alerted me to the presence of drug odor coming from that vehicle." In addition to his direct examination testimony, Officer Baisch also testified during cross-examination that he had "already seen the alert behavior before [the K-9's] nose touches the [vehicle]." After the original hearing on the motion to suppress, during its subsequent oral decision, the district court confessed that it could never tell what the K-9 is doing and had to "rely upon what the officer says--until it gets to the point where it sits and does the final alert."

The district court ultimately granted suppression under *Dorff*, after finding the K-9 unlawfully trespassed against the vehicle before giving a final indication. This was an error. The district court appeared to reject the State's argument that there was a legal difference between an alert and a final indication and appeared to reject that the K-9's alert was sufficient to establish probable cause. The district court also questioned the premise of the K-9 giving a final indication if an alert was enough to establish probable cause. While the district court did not have the benefit

8

of *Ricks* when it made its decision, this Court has now made it clear that there is a difference between a K-9's alert and final indication. *See Ricks*, 173 Idaho at 77 n.1, 539 P.3d at 193 n.1. If a K-9 alerts, that is sufficient to provide probable cause to search the vehicle even if the K-9 has not yet given a final indication. *Id.* at 80, 539 P.3d. at 196.

Finally, the district court appeared to base its conclusions on the timing of the alert. It appeared to find the alert was too close in time to the final indication. The district court stated that the K-9 was in "one continuous motion" searching for the scent of narcotics such that his actions occurred "in one fell swoop." The district court found that "it all happened so fast . . . that the additional split second" with the K-9 "touching his nose to discern and confirm its smell, then giving the final word was all one thing, that was a trespass and intermeddling," which was "all done in an attempt to find or obtain information or evidence against [Anderson] such that the *Dorff* case says that it has to be suppressed." These conclusions about the alert timing are incorrect. Officer Baisch never testified the alert was contemporaneous with the K-9 touching the vehicle. Instead, he testified that the alert occurred beforehand. The district court adopted this testimony as the basis of its factfinding. The district court's own review of the officer's video shows that, regardless of how continuous the process looked, as a matter of chronology, the K-9 alerted before touching the vehicle. The district court stated:

> I watched the video and it looked like to me it was all in one fell swoop. He alerted, came back and touched his nose upon this door seam of the vehicle which would be a trespass, and then, I think the testimony was, at that point that confirmed his smell and he gave his final indication.

The conclusion that three separate sequential acts occurred "all in one fell swoop" cannot be reconciled with the step-by-step timeline described by the district court.

Whether a K-9's actions surrounding the alert are "continuous" or "fast," they are not the deciding factor. A K-9's movements are generally continuous leading up to a final indication. The instant the K-9 alerted is the instant Officer Baisch had probable cause to search Anderson's vehicle. Similar to this Court's holding in *Ricks*, Officer Baisch's testimony about the K-9's signaling behavior provided objective evidence of the K-9's general alert to the presence of the odor of drugs emanating from the vehicle before the K-9 entered the vehicle and supports a probable cause finding. *See Ricks,* 173 Idaho at 80, 539 P.3d. at 196. The district court therefore erred by not concluding Officer Baisch had probable cause to search Anderson's vehicle.

## IV.

### CONCLUSION

Because Officer Baisch had probable cause to search Anderson's vehicle, the district court erred in granting Anderson's motion to suppress. Accordingly, we reverse the district court's order granting Anderson's motion to suppress and remand the case for further proceedings.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.